DRAGGOO v DRAGGOO

Docket No. 187805. Submitted April 2, 1997, at Grand Rapids. Decided
May 13, 1997, at 9:05 A.M. Leave to appeal sought.

Sheilla A. Draggoo brought an action in the Oceana Circuit Court
against Darrell S. Draggoo, seeking a divorce. During pretrial pro-
ceedings, the defendant refused to provide satisfactory answers to
the plaintiff's interrogatories and refused to produce certain
requested bank records, even after the court, Terrence R. Thomas,
J., had ordered the defendant to answer the interrogatories and
produce the records and had levied sanctions and had found the
defendant in contempt of court because of his failure to comply
with the court's orders. As a result of the defendant's failure to
cooperate in discovery and obey the court's orders, the court
granted the plaintiff's motion for a default judgment of divorce and
refused, over a defense objection, to permit the defendant or
defense counsel to cross-examine the witness, object to testimony,
or otherwise participate in the hearing to determine disposition of
the marital estate. The court, after hearing the testimony of the
plaintiff concerning the value of the marital estate, including her
estimate of the amount of money held by the defendant in
unknown bank accounts, awarded the plaintiff real and personal
property, which, when combined with the cash award that the
court ordered the defendant to pay to the plaintiff, gave the plain-
tiff slightly less than one half of the estimated total value of the
marital estate. The defendant appealed.

The Court of Appeals held:

1. The court did not abuse its discretion in entering a default
judgment of divorce and in refusing to let the defendant or defense
counsel participate in any meaningful way in the hearing concern-
ing the disposition of the marital property. MCR 2.313(B)(2) clearly
authorizes a court to enter as a sanction for a party's failure to pro-
vide or permit discovery an order rendering a default judgment
against the disobedient party. Although the sanction of a default
judgment is a drastic measure that should be used with caution and
only when there has been a flagrant and wanton refusal to facilitate
discovery, such a sanction was appropriate here, because the
record is replete with evidence of the defendant's total disregard of

the plaintiff's request for discovery and of the court's orders that attempted to facilitate that discovery.

2. The court properly prohibited the defendant and his counsel from participating fully in the hearing to determine the division of the marital estate. A divorce proceeding is equitable in nature, and a court sitting in equity possesses the inherent authority to enforce its decrees. Allowing a party to a divorce who has refused to cooperate with discovery by refusing to provide information that related to the question of the appropriate distribution of the marital estate to participate in the hearing concerning the distribution of that estate would render the sanction of a default judgment of the divorce ineffective in its goal of deterring disobedience of a court's orders. Given the refusal of the defendant to comply either with the requests for discovery or with the court's orders compelling discovery, despite the court's attempts to induce the defendant's compliance by means of monetary sanctions and imprisonment for contempt of court, the court properly held that not only would a default judgment be entered against the defendant, but also the defendant and defense counsel would not be allowed to participate in the hearing regarding the division of the marital property. The defendant's reliance on the holding in *Perry v Perry*, 176 Mich App 762 (1989), is misplaced, because the *Perry* Court wrongly applied to the equitable proceeding involved in the division of the marital estate in a divorce the rule applicable in a legal action in which a jury had been requested that a defaulted party nevertheless has the right to a trial of the question of damages at which full participation by the party is permitted despite the default.

3. The court's division of the marital estate was supported by the evidence on the record and cannot be said to be clearly erroneous. To the extent that defendant argues the accuracy of the evaluation placed on certain of the assets, the lack of certainty of the exact nature and value of those assets arises from the defendant's failure to comply with the requests and orders for discovery. According to the proofs on the record, the defendant received more than half of the marital estate. Under these circumstances, it cannot be said that the court abused its discretion in its division of the marital estate.

4. Because of the language in *Perry, supra*, supporting the defendant's position, the plaintiff is not entitled to actual and punitive damages pursuant to MCR 7.216(C) from the defendant for having brought a vexatious appeal.

Affirmed.

1. Pretrial Procedure — Discovery — Remedies — Default Judgments.

    A court as a sanction for a party's failure to provide or permit discovery may enter an order rendering a default judgment against the disobedient party; the sanction of a default judgment is a drastic measure that should be used with caution and only when there has been a flagrant and wanton refusal by a party to cooperate with requests or orders for discovery.

2. Divorce — Discovery — Default Judgments — Division of Marital Estate.

    A court in a divorce action in the exercise of its equitable powers may deny participation by a party in the hearing to determine the division of the marital estate where that party has refused to act upon either the requests of the opposing party for discovery or the court's orders requiring participation with discovery and where the granting of a default with respect to the divorce itself would be an insufficient deterrent to the contemptuous disregard of the court's authority.

*Ronald C. Wilson*, for the plaintiff.

*Knudsen, Wasiura & Associates, P.C.* (by *Edward E. Wasiura*), for the defendant.

Before: TAYLOR, P.J., and GRIBBS and HOOD, JJ.

TAYLOR, P.J. Defendant appeals as of right the trial court's order entering a default judgment of divorce against him, which included a division of the marital estate, for his failure to comply with discovery orders under MCR 2.313(B)(2). We affirm.

I

Plaintiff filed a complaint for divorce on July 14, 1994. Subsequently, plaintiff filed a motion to compel defendant to answer interrogatories. After a hearing, the trial court entered an order requiring defendant to answer the interrogatories within thirty days. When defendant did not comply with this order, plaintiff filed a second motion to compel answers to interrogatories. At a hearing, the trial court found that defend-

ant had defied the court order by refusing to produce his bank records, ordered defendant to comply with the discovery request to plaintiff's satisfaction and to produce his bank accounts and business records, and also imposed sanctions in the amount of $1,750 against defendant, ordering him to pay the sanctions or face incarceration. A third hearing regarding plaintiff's motion to compel discovery took place on May 30, 1995. Before the hearing, defendant provided plaintiff's counsel with signed answers to interrogatories that were unsatisfactory to plaintiff's counsel and failed to produce his bank accounts and business records. At the hearing, plaintiff testified that she had intercepted several bank statements that had been sent to a home the couple maintained in Florida, which showed substantial deposits and withdrawals from accounts with a bank in Melbourne Florida, some of which had occurred only three months previously in February 1995. Defendant claimed that he could not remember having made deposits and withdrawals in the amounts of $10,000 and $20,000. However, because defendant otherwise refused to answer questions posed by plaintiff's counsel and because he failed to provide the court-ordered business records and bank accounts, the trial court found him in contempt of court and remanded him to the county jail. The trial court ordered defendant to answer the questions put to him and to provide information about his bank accounts in order to purge his contempt of court and as a condition of his release from jail.

However, because of defendant's medical condition, the court entered an order one day later releasing defendant from jail and further ordering him "to provide the information requested in writing of plaintiff's

attorney on May 30, 1995, and provide such books and records as requested in writing." The court order further stated that "[i]n the event that defendant fails to provide such information as requested by Tuesday, June 6, 1995, he shall report to Oceana County Jail . . . June 7, 1995, to be further incarcerated until further order of the Court." Two days after his release from jail, defendant went to Florida, where he remained until the day before trial, never providing the ordered discovery.

At the trial on June 21, 1995, plaintiff's counsel asked that "defendant be defaulted and not be allowed to submit proofs or countervailing allegations or facts and that we would be allowed on behalf of the plaintiff to simply submit the proofs we have showing the marital assets and then ask the Court's decision in settling and giving us an order of judgment." Defendant, after being sworn as a witness, admitted that he received a copy of the order providing for his release, but denied that he read it. After plaintiff's counsel renewed the request for a default, the trial court ruled:

> Given the circumstances of the case, the first—The Court is going to order Mr. Draggoo and his lawyer to remain present in the courtroom, and secondly, it's going to grant your motion and grant the default judgment. Mr. Draggoo and his attorney are to remain present in the courtroom. They are not to speak unless the Court directs an inquiry of them. Ah, I agree, Mr. Wilson [plaintiff's counsel] and Mr. Wasiura [defendant's counsel], there has just been absolutely no cooperation on the part of Mr. Draggoo.
>
> The Court is satisfied that justice would not be served by anything short of that and not only that the Court knows of no other way of dealing with Mr. Draggoo. It's warned him. It's given him time to come in here. It even went so far as to

incarcerate him, and it's apparent that none of its power in this respect is going to cause Mr. Draggoo to cooperate not only with the Court but with the plaintiff for purposes of fairly and justly disposing of this particular case.

There is still a further danger that mis-justice [sic] or justice could be discouraged in this case in the sense that without the discovery and without the full knowledge of the marital estate, ah, plaintiff could proceed even in default, as the Court is allowing her to do and to request a certain judgment only to find out later that there are $200,000 that she wasn't aware of, ah, but if she is willing under those circumstances to proceed on that basis . . . [t]he Court would allow that essentially being at wit's end and not knowing how to coerce the defendant any further.

The record can also reflect that after—I think this is my 17th year on the bench. This is the first time in a civil case where I have ever had to incarcerate a defendant or anybody to coerce them to comply with discovery rules.

When defense counsel sought to clarify the trial court's ruling, the trial court stated that "[i]t's not going to allow you to do anything other than witness except as the Court directs specific questions toward you," and that the court would not permit cross-examination of the witness or objections for hearsay, because "[i]t's by default just as though you didn't show up." After defense counsel objected that defendant was being denied his right to participate in the hearing, equating a determination of marital property division with a determination of damages in other civil cases, the trial court replied:

In a legal action, I think you would be . . . correct. . . . This is not a legal case. This is an equitable case. . . . . It's a property division, and it's within the province of the Court . . . given the guidelines for dividing marital estates. [The] purpose for requiring you to remain and for Mr. Draggoo to remain and to answer questions is if the Court is going to

attempt to deal with this case fairly, even regardless of Mr. Draggoo's contempt for the Court, and the reason we are having you stay was in the event that something comes up that the Court isn't sure about, the Court would address a question with the idea that an equitable result regardless of Mr. Draggoo, would result in this case, Mr. Wasiura. That's the reason for having you stay.

Plaintiff was then sworn as a witness and examined. Testimony established that the parties were part-time Michigan residents with homes in Michigan and Florida. In the course of their marriage, the parties accumulated a substantial amount of real and personal property. Plaintiff estimated the total value of the Michigan property to be $103,950 and the total value of the Florida property to be $89,915. Plaintiff also estimated that the parties' household furnishings for their Florida and Michigan residences were worth $5,383.

According to plaintiff, defendant had a number of different bank accounts in Florida and made deposits and withdrawals frequently, but that it was difficult to estimate the amount of his funds because he operated with cash, bank drafts, and money orders. Plaintiff testified that she found money orders in excess of $2,000 that defendant kept in a refrigerator and estimated that there could be $50,000 in unknown funds. While plaintiff estimated that the approximate value of the marital estate was $400,000, she sought an award of real and personal property with a value of $154,236.41, or less than half of the estate's estimated value, because "I don't want to have to come back to court over it to get my money out of him. I'd rather have the real estate."

After taking plaintiff's testimony regarding the marital estate, the trial court inquired of defense counsel to ask defendant if he knew of any other marital assets. Defendant responded that plaintiff had listed their assets to the best of his knowledge, but his counsel added that defendant did not agree with the values attached to them by plaintiff and that he did not have concealed bank accounts totaling $50,000. When the trial court asked defense counsel for his reaction to plaintiff's requested relief, counsel claimed that plaintiff's request was not fair because "[s]he wants to give him all of the assets with inflated or speculative numbers, and she wants to take the hard identifiable assets, in terms of value, assets and that's why he thinks it's not fair." In response, the trial court stated:

> Well, the Court, obviously, knows the problems we have had with Mr. Draggoo concerning the discovery and that's the reason for the default. I have listened carefully this morning and as to each one of these assets. How they were described. How the value was arrived at, and also looked at the supporting documentation that has been provided from time to time by Mrs. Draggoo. I agree with her. I think, if anything, she's evaluating these things fairly. If anything, somewhat lightly.

In the judgment of divorce, the trial court granted plaintiff's request for an award of real and personal property with a value of $154,236.41, but decided to award her $20,000 in a cash settlement to equalize the property settlement in light of the court's finding that the marital estate had a value in excess of $400,000.

II

On appeal, defendant argues that the trial court improperly entered a default judgment of divorce against him for his refusal to comply with court orders compelling answers to interrogatories and information about his bank accounts. We disagree.

MCR 2.313(B)(2) provides in pertinent part:

> If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may order such sanctions as are just, including, but not limited to the following:
>
> *     *     *
>
> (b) an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the party from introducing designated matters into evidence;
>
> (c) an order . . . rendering a judgment by default against the disobedient party.

In *Adams v Perry Furniture Co (On Remand)*, 198 Mich App 1, 15-16; 497 NW2d 514 (1993), quoting *Frankenmuth Mutual Ins Co v ACO, Inc*, 193 Mich App 389, 396-397; 484 NW2d 718 (1992), this Court observed:

> "Default judgment is a possible sanction for discovery abuses. MCR 2.313(B)(2)(c). It is, however, a drastic measure and should be used with caution. . . . When the sanction of a default judgment is contemplated, the trial court should consider whether the failure to respond to discovery requests extends over a substantial period of time, whether there was a court order directing discovery that has not been complied with, the amount of time that has elapsed between the violation and the motion for default judgment, and whether wilfulness has been shown. . . . The court must also evaluate on the record other available options before

> concluding that a drastic sanction is warranted. . . . The sanction of default judgment should be employed only when there has been a flagrant and wanton refusal to facilitate discovery, that is, the failure must be conscious or intentional, not accidental or involuntary. . . . We review the trial court's decision to grant a default judgment for an abuse of discretion."

Michigan adopted a no-fault divorce law in 1971. *Kretzschmar v Kretzschmar*, 48 Mich App 279; 210 NW2d 352 (1973). Since that time, it has been the law that a marriage will only be recognized if two parties agree, but a divorce will be granted upon the request of only one of the original marrying parties, i.e., even over the objection of one of the marrying parties. *Id.* at 285. This Court has considered the propriety of granting a default judgment of divorce twice since no-fault divorces were recognized in Michigan.

In *Abadi v Abadi*, 78 Mich App 73, 77-78; 259 NW2d 244 (1977), overruled in part on other grounds in *Stamadianos v Stamadianos*, 425 Mich 1, 10; 385 NW2d 604 (1986), this Court found that the trial court did not abuse its discretion in ordering a default judgment of divorce for failure to comply with discovery orders. In that case, the divorce action had been pending for more than two years when the trial court entered an order requiring the defendant to produce documents. Subsequently, the plaintiff's counsel moved to enforce the order after becoming "justifiably apprehensive of ever receiving the documents in question." *Id.* at 78. Despite the issuance of an arrest warrant after an alimony show cause hearing, the warrant had not been served, and "[t]he record was replete with both testimony and affidavit that the defendant was avoiding service." *Id.* The defendant

also indicated that he would not be in court on the trial date and that he was seeking new counsel because his relationship with his attorney had broken down. In finding that the trial court did not abuse its discretion in ordering entry of a default judgment against the defendant, this Court stated:

> We realize that dismissing an action or rendering judgment by default for refusal to make discovery are drastic sanctions. Nevertheless, the ultimate power of the court to impose such sanctions is an appropriate remedy where such refusal is flagrant and wanton. We cannot say on review that the present case did not justify such drastic action. [*Id.* at 77.]

Defendant contends that the entry of a default judgment was improper because the trial court, by barring him from presenting any proofs and from cross-examining plaintiff concerning issues of property division, prohibited him from participating in the trial in any meaningful way. To support his contention, defendant cites *Perry v Perry*, 176 Mich App 762; 440 NW2d 93 (1989), where this Court found that the trial court erred in its determination that the defendant failed to show good cause to set aside a default judgment in a divorce action because the defendant was entitled to participate in the adjudication of the property distribution and to notice at least seven days before the entry of the default judgment, which contained provisions different in kind and amount from the relief demanded in the pleading. In *Perry*, this Court, citing *Wood v DAIIE*, 413 Mich 573, 583-584; 321 NW2d 653 (1982)[1] and *Dollar Rent-A-Car Systems*

---

[1] In *Wood v DAIIE*, 413 Mich 573, 583-584; 321 NW2d 653 (1982), the Court, interpreting the predecessor rule to MCR 2.313, held that "a

*v Nodel Const,* 172 Mich App 738; 432 NW2d 423 (1988),[2] stated:

The purpose of the notice requirement is to apprise the defaulting party of the possibility of entry of judgment so that he may have an opportunity to participate in any hearing necessary to ascertain the amount of damages or other form of remedy to be granted. . . . This purpose is premised on the distinction between the entry of default and the entry of judgment. The former operates as an admission by the defaulting party that there are no issues of liability, but leaves the issues of damages unresolved until entry of judgment. . . . The latter reduces the default to a judgment for money damages. Once a valid default is taken, the defaulting party remains entitled to full participatory rights in any hearing necessary for the adjudication of damages. . . .

Plaintiff's complaint for divorce prayed that the court "decree an equitable division of property and debts of the

---

defaulting party who has properly invoked his right to jury trial retains that right *if* a hearing is held to determine the amount of recovery." (Emphasis in original). In *Wood,* the plaintiff brought an action against the defendant for personal injury protection benefits due him as a result of injuries suffered in an accident with the defendant's insured and also demanded a jury trial. The defendant answered and also demanded a jury trial. When the defendant was served with interrogatories, but failed to answer them or respond to court orders compelling answers, the trial court entered a default judgment, denying the defendant the opportunity to participate in the hearings concerning the plaintiff's motion and awarded the plaintiff wage-loss benefits, compensation for mental anguish, attorney fees, and interest. The *Wood* Court ruled that the trial court erred in denying the defendant the opportunity to participate in the hearing because it "was obliged to accord defendant its properly preserved right to jury trial." *Id.* at 585.

[2] In *Dollar Rent-A-Car Systems v Nodel Const,* 172 Mich App 738; 432 NW2d 423 (1988), a default judgment was entered by the trial court against one of the defendants for his failure to file an answer to the complaint. As a result, the defendant was precluded from participating in the jury trial after which a judgment was entered against him in the amount of $436,000. In reversing the entry of the default judgment and remanding for an evidentiary hearing concerning the issue of damages, this Court, citing *Wood, supra,* found that the trial court erred in denying the defendant the right to present evidence and to cross-examine witnesses solely with regard to the damages.

parties hereto." This prayer does not state a specific amount demanded. However, the default judgment contains specific provisions for the division of property and the monetary and legal responsibilities of the parties. Thus, because the default judgment contained provisions different in kind and amount from the relief demanded in the pleading, defendant, even though in default, was entitled to participate in the adjudication of the property distribution and . . . was entitled to notice at least seven days prior to the entry of the default judgment. [*Id.* at 767-768 (citations omitted).]

The trial court's actions in the case at bar were entirely appropriate. The rule set forth in *Wood* that "a defaulting party who has properly invoked his right to jury trial retains that right *if* a hearing is held to determine the amount of recovery" does not apply in an equitable action, such as a divorce action, where there is no right to a jury trial. Because *Wood* is confined to civil actions at law where the defaulting party retained a right to a jury trial, we find that *Perry* was wrong when it indicated that a defaulted party in a divorce case is entitled to full participatory rights in the adjudication of the property division. Further, because the court is required to grant a divorce upon the insistence of only one of the parties, there is no question that a divorce had to be granted in the case at bar. If the court entered a default against defendant, but then allowed him to fully participate in presenting evidence regarding the property division, it would be as if no sanction at all had been imposed for defendant's flagrant disobedience of the court's orders.

In our view, the ultimate sanction of default judgment is a necessary sanction at the trial court's disposal to require compliance with its interim orders in a divorce case. Specifically, under MCR 2.313(B)(2)(b),

the court may issue an "order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the party from introducing designated matters into evidence." To allow a defaulted party to flout the court's authority but still have an opportunity to contest the property division would thus negate the effectiveness of the court rule as a deterrent in a divorce action. Further, denying a defaulted party in a divorce action full participatory rights in the adjudication of the property division is consonant with the statutory powers of a divorce court. MCL 552.12; MSA 25.92 provides:

> Suits to annul or affirm a marriage, or for a divorce, shall be conducted in the same manner as other suits in courts of equity; and *the court shall have the power* to award issues, to decree costs, and *to enforce its decrees*. [Emphasis added.]

As noted in *Wiand v Wiand*, 178 Mich App 137, 144; 443 NW2d 464 (1989), quoting *Schaeffer v Schaeffer*, 106 Mich App 452, 457; 308 NW2d 226 (1981):

> "A court possesses inherent authority to enforce its own directives. A divorce case is equitable in nature, and a court of equity molds its relief according to the character of the case; once a court of equity acquires jurisdiction, it will do what is necessary to accord complete equity and to conclude the controversy."

Allowing a defaulted party to participate in the adjudication of the property division in a divorce case would effectively undermine the court's "inherent authority to enforce its own directives" and "[to mold] its relief according to the character of the case." *Id.*

As in *Abadi, supra,* we find that the trial court did not abuse its discretion in granting a default judgment in favor of plaintiff as a sanction under MCR 2.313(B)(2) for defendant's refusal to comply with the court's orders compelling answers to interrogatories and information about his bank accounts. The record in this case is replete with defendant's violations of the court's orders and clearly shows that the trial court tried less drastic measures to coerce defendant's compliance with the discovery requests, but to no avail. We find no abuse of discretion by the trial court in granting a default judgment of divorce against defendant, and we find no abuse of discretion in denying defendant permission to participate in the adjudication of the property division.

III

Finally, we reject defendant's claim that the ultimate property division in this case was inequitable. In a divorce case, this Court must first review the trial court's findings of fact regarding the valuations of particular marital assets under the clearly erroneous standard. *Sparks v Sparks,* 440 Mich 141, 151; 485 NW2d 893 (1992); *Beason v Beason,* 435 Mich 791, 805; 460 NW2d 207 (1990). A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake has been made. *Id.* This Court gives special deference to a trial court's findings when they are based on the credibility of the witnesses. *Thames v Thames,* 191 Mich App 299, 302; 477 NW2d 496 (1991). If the trial court's findings of fact are upheld, this Court must decide whether the dispositive ruling was fair and equitable in light of those facts. The dis-

positional ruling is discretionary and should be affirmed unless this Court is left with the firm conviction that the division was inequitable. *Sands v Sands*, 442 Mich 30, 34; 497 NW2d 493 (1993); *Sparks, supra* at 151-152.

Although defendant claims that the property division was not fair and equitable because the trial court awarded him "the value-inflated or 'phantom' assets" while awarding plaintiff "the assets with readily identifiable values," we cannot say that the trial court's valuations of the marital assets were clearly erroneous. While defendant challenges the accuracy of the trial court's valuation of the marital property, there is, after all, no certain way of knowing whether the trial court's valuation was accurate in the absence of defendant's own compliance with the court's orders compelling discovery. Given defendant's steadfast refusal to comply with these orders, he should not be heard to complain that the trial court committed error in its factual findings when he was the party responsible for the alleged errors. Defendant's refusal to answer the interrogatories or supply bank documents could be considered as a relevant factor in determining an equitable division of property because it was tantamount to an attempt to conceal assets. *Sands, supra* at 36. While defendant complains that the trial court failed to divide the property on an equal basis, the record shows that the court awarded defendant more than one-half of the estate valued in excess of $400,000, notwithstanding that defendant thrice refused to comply with the court's orders compelling discovery. In light of these facts, the trial court did not abuse its discretion in its division of the marital estate.

We decline plaintiff's request to award her actual and punitive damages pursuant to MCR 7.216(C) for defendant having filed a vexatious appeal because there is language in *Perry, supra,* which we have now disavowed, that supported defendant's position.

Affirmed. Plaintiff, being the prevailing party, may tax costs pursuant to MCR 7.219.