# STATE OF MICHIGAN

# COURT OF APPEALS

BRETT MATTHEW SCHIEBNER,

        Plaintiff/Counter-Defendant-
        Appellee,

v

JESSICA LYNN SCHIEBNER,

        Defendant/Counter-Plaintiff-
        Appellant.

UNPUBLISHED
November 24, 2015

No. 321173
Livingston Circuit Court
LC No. 13-047392-DM

Before: METER, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

Defendant appeals by right an April 2, 2014, judgment of divorce. Defendant challenges portions of the judgment dividing and distributing the parties' property. For the reasons set forth in this opinion, we affirm.

## I. RELEVANT FACTS

The parties were married for 13 years. During the marriage they became involved in two close corporations, Overhead Door of Lansing (OHD Lansing) and JLB of Whitmore Lake (JLB), d/b/a Overhead Door Company of Whitmore Lake, both of which involve the installation of overhead doors. It is undisputed that defendant's father Milton Terry initially formed these two corporations, however, there was conflicting testimony regarding how the ownership of the corporations transferred from Terry.

At some point, defendant owned four percent of OHD Lansing, and, in 2012, her parents gifted the remainder of the company to her. The trial court determined that OHD Lansing was defendant's separate property and plaintiff does not dispute that finding on appeal.

With respect to the transfer of JLB, plaintiff testified that, in 2007, he was working for OHD Lansing as well as performing his duties in the National Guard. Plaintiff testified that in 2008, third parties who attempted to purchase JLB ran the company "into the ground," and it was returned to Terry. Plaintiff explained that when Terry reacquired JLB, plaintiff resigned from the National Guard to work fulltime at restoring JLB to profitability. Plaintiff testified that he and defendant purchased the assets of JLB in 2008 from Terry. According to plaintiff, Terry asked the couple during a family vacation whether they wanted the company or whether they

-1-

wanted to sell off the assets. Plaintiff told Terry that he would run the company and defendant also told Terry that they wanted the company.

According to plaintiff, the parties and Terry initially agreed that the business would be majority owned by defendant in order to qualify for minority benefits and government contracts as a woman-owned business. Plaintiff stated that the business was placed in defendant's name alone because, at the time, plaintiff was so busy running the business that he did not have time to fill out the paperwork for the planned joint ownership. Plaintiff also stated that the couple was going to use marital funds to purchase the company; however, he stated that defendant was supposed to take care of that aspect of the transaction. Plaintiff did not know whether the funds were ever paid, but believed they were not.

Plaintiff stated that he thought he had seen a valuation of the business from approximately that time that listed assets, accounts receivable, and raw materials of around $280,000. Plaintiff testified that he signed guarantees for credit on JLB's behalf in 2007. He was not sure whether he was still a guarantor on any of JLB's loans, although defendant was a guarantor. The evidence showed that, following the transfer of the company, plaintiff was actively involved in the daily operations of the company.

Defendant and Terry offered testimony that conflicted with plaintiff's assertion that Terry transferred JLB to both plaintiff and defendant. Terry testified that it was his intent to gift JLB to defendant and that he did not intend to gift any of the corporation to plaintiff. Terry denied that he discussed with plaintiff whether plaintiff and defendant should purchase JLB from him.

Defendant testified that no discussions occurred with her father about any purchase of JLB, but that he always intended to gift the assets of the company to her. Defendant explained that while she, her father, and plaintiff were on a family vacation in Jamaica, they did not discuss what would happen to the company, nor were there any conversations that defendant should be the majority owner for business purposes. However, she later provided contrary testimony and admitted that plaintiff was part of these conversations. Defendant agreed that plaintiff had been a cosigner on credit application documents for JLB. Defendant admitted that she gave plaintiff a $50,000 bonus in 2011, equal to her own, and that the average bonus for other employees was $7,000, with $15,000 for the manager of OHD Lansing. Defendant acknowledged that her parents did not fill out a gift tax return for the alleged gift of JLB, although they did so for the later transfer of OHD Lansing.

Regarding the valuation of JLB, the parties agreed that JLB would be valued by Ray Cooper, CPA. Cooper's valuation apparently was $195,000, but plaintiff testified that the valuation did not include sales or future sales, but only the capital assets of the company. Plaintiff testified that he thought a fair price for the company was $480,000, which was apparently the number reached by defendant's first appraiser. Plaintiff further testified that JLB owed OHD Lansing approximately $83,000. Defendant stated that she agreed that the present value of the business was $480,000 as set out in her separate appraisal. She also testified that the business owed $500,000 in accounts payable, but had more than that amount in accounts receivable.

Regarding the disputed matters, the trial court found that JLB was a marital asset and awarded it to plaintiff. Defendant was awarded OHD Lansing. The court directed that the marital home be sold and that defendant and plaintiff would both have a right of first refusal if they wished to purchase it. The marital portion of the parties' investment accounts were to be divided equally. The parties were awarded the automobiles currently in their possession and, with certain exceptions, the remainder of the personal property was to be sold with the proceeds divided equally. This appeal ensued.

## II. ANALYSIS

On appeal, defendant argues that the circuit court erred in its distribution of property.

"This Court reviews a property distribution in a divorce case by first reviewing the trial court's factual findings for clear error, and then determining whether the dispositional ruling was fair and equitable in light of the facts." *Olson v Olson*, 256 Mich App 619, 622; 671 NW2d 64 (2003).

> A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake has been made. This Court gives special deference to a trial court's findings when they are based on the credibility of the witnesses. [*Draggoo v Draggoo*, 223 Mich App 415, 429-430; 566 NW2d 642 (1997).]

The trial court's dispositional ruling is discretionary and will be affirmed unless we are left with a firm conviction that the distribution was inequitable. *Welling v Welling*, 233 Mich App 708, 710; 592 NW2d 822 (1999).

Defendant first argues that the trial court erred when it determined that JLB was marital property and she maintains that JLB was gifted to her by her father.

"[A]ssets acquired and income earned during the course of a marriage are generally to be considered part of the marital estate." *Allard v Allard*, 308 Mich App 536, 560-561; 867 NW2d 866 (2014). An exception to this general rule is that "property received by a married party as an inheritance, but kept separate from marital property, is deemed to be separate property not subject to distribution." *Dart v Dart*, 460 Mich 573, 584-585; 597 NW2d 82 (1999).

In this case, the trial court did not clearly err in finding that JLB was an asset that the parties acquired during the course of the marriage and therefore was part of the marital estate. *Allard*, 308 Mich App at 560-561. Here, plaintiff testified that Terry asked both parties whether they wanted JLB or wanted the assets of the company. Plaintiff explained that both he and defendant informed Terry that they wanted to run the company. Thereafter, JLB was transferred into defendant's name, but plaintiff explained that this was done so that it would qualify as a minority-owned business. Both plaintiff and defendant participated in the daily operations of JLB and plaintiff dedicated his full-time efforts to the business. Although defendant initially testified that plaintiff was not present when she and Terry discussed gifting the business, defendant later recanted that testimony and agreed that plaintiff was present during the discussion. Additionally, while Terry testified that he intended to gift the business exclusively to defendant, unlike when Terry gifted the Lansing-OHD company to defendant, with respect to

JLB, Terry did not record the transfer as a gift for tax purposes. Moreover, given that Terry admitted to lying to the court with respect to a different issue, the trial court could have concluded that Terry was not credible when he testified that he did not intend for plaintiff to retain any interest in JLB. See *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008) (this Court will defer to a trial court's credibility determinations). In short, the trial court did not clearly err in finding that JLB was part of the marital estate; thus, defendant's numerous arguments concerning how division of the company should have been limited to its appreciation under *Reeves v Reeves*, 226 Mich App 490, 496; 575 NW2d 1 (1997) are devoid of merit.

Defendant argues that by awarding JLB to plaintiff, the trial court's division of the marital estate was inequitable.

The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of marital property in light of all the circumstances. *McNamara v Horner*, 249 Mich App 177, 188; 642 NW2d 385 (2002). The division need not be mathematically equal, but any significant departure from congruence must be clearly explained by the trial court. *Id*. The trial court's disposition of marital property is intimately related to its findings of fact. *Id*. In reaching an equitable division, the trial court should consider the following factors whenever they are relevant to the particular case:

> (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. [*Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893, 894 (1992).]

Notably, defendant does not challenge the ultimate distribution of all of the parties' assets. As noted above, in general the trial court either divided the property roughly equally, or required that it be sold and the proceeds then divided equally. An exception to this was the distribution of JLB. In awarding JLB to plaintiff, the trial court found as follows:

> The plaintiff father shall be awarded all interest in the business known as JLB including but not limited to all contracts, leases, accounts receivable, materials, assets, equipment, tools, vehicles and good will as his sole and separate property free and clear of any claim of the defendant . . . . The defendant shall be awarded all interest in a business known as Over Head Door of Lansing free and clear of any interest of the plaintiff. This business was clearly a gift from her father . . . .

Before reaching this conclusion, the court considered that the parties had children to care for, it considered the duration of the marriage, that both parties worked and contributed to the marital estate, that both were of similar age and in good health, that both parties had the same or similar life status, and that both had similar necessities. The court also considered that plaintiff left his employment in the National Guard to work full-time for JLB. The court noted that defendant had a much greater earning potential because of her family's businesses and that defendant terminated plaintiff's employment from JLB at one point, which left plaintiff searching for employment. The court considered that defendant engaged in extramarital affairs,

and "either participated in or did nothing to stop the obstructionist conduct of her father in efforts to gain discovery as to the family business," and noted that defendant lied to the court when she stated that Terry was out of the country and unavailable for a deposition. The court also considered that defendant lied during a portion of her testimony and violated a court order when she refused to pay spousal and child support.

Here, in light of all of the circumstances, we are not left with a definite and firm conviction that the trial court's award of JLB to plaintiff was inequitable. *Welling*, 233 Mich App at 710. Both parties introduced Cooper's valuation of $195,100 for JLB, although both agreed the business was worth $480,000 at the time of trial and both parties agreed that JLB owed a debt of $83,000 to OHD Lansing. While OHD Lansing was not part of the marital estate as it was gifted to defendant, the trial court was free to consider all of the circumstances in awarding JLB to plaintiff. Particularly, the court could have considered that defendant had OHD Lansing as a means of earning a living and providing for the children of the marriage. The court was free to consider that plaintiff's only means of gainful employment was at JLB given that he left the National Guard. In addition, the court could have considered that JLB owed OHD Lansing $83,000 and that defendant's corporation ultimately ended up with an additional $83,000. By awarding JLB to plaintiff, plaintiff inherited both the assets and the liabilities associated with the company. Thus, plaintiff inherited the $83,000 of debt still owed to OHD Lansing. The court could have found that defendant's ownership of OHD Lansing coupled with the $83,000 debt balanced out the equities of awarding JLB to plaintiff.

Defendant maintains that the trial court erred when it disproportionately relied on her marital infidelity and her actions during the divorce proceedings to award JLB to plaintiff and to "punish" her for her discovery violations. This argument lacks merit.

Defendant is correct that "a judge's role is to achieve equity, not to 'punish' one of the parties." *Sands v Sands*, 442 Mich 30, 36; 497 NW2d 493 (1993). Defendant also correctly notes that "an attempt to conceal assets does not give rise to an automatic forfeiture." *Id*. However, contrary to defendant's arguments concerning fault, the trial court did not improperly "punish" defendant for her discovery violations by awarding plaintiff more property than that to which he was entitled. To the contrary, the trial court instead ordered defendant to pay $2,500 in attorney fees to plaintiff because of "her conduct in delaying or interfering with the discovery process." Additionally, as discussed above, the court considered that both parties needed gainful employment, that both parties needed to support the children, that plaintiff was more involved with the daily operations of JLB, and that defendant had opportunities with her own business— OHD Lansing. Thus, the court's property division was not meant to punish defendant. Moreover, even if the trial court did rely in part on defendant's misconduct in its decision concerning the division of JLB, "[a] party's attempt to conceal assets is a relevant consideration" as one of the "many facts that the court must weigh" in determining an equitable distribution. *Sands*, 442 Mich at 36.

With respect to defendant's infidelity, the parties agreed that defendant had been unfaithful, and defendant acknowledges on appeal that this properly could be considered in the property division. However, defendant ignores that there were other matters related to fault that further demonstrate that the trial court's award of JLB to plaintiff was equitable in light of all the circumstances. During the beginning of the proceedings, plaintiff remained employed at JLB as

-5-

its vice-president. Testimony indicated that plaintiff ended a 19-year career with the National Guard shortly before he would have been eligible for long-term pension and other benefits, to run JLB for the parties' benefit. However, defendant terminated plaintiff's employment with JLB during the proceedings and the trial court found that defendant's firing of plaintiff was "vindictive and punitive," and that her proffered reasons for doing so were invalid and a "ruse, or subterfuge." The trial court also noted that "plaintiff's subsequent employment efforts have been less than successful, due to what would be no fault of his own." The trial court's repeated discussion of what it found to be defendant's misconduct in this action, as well as its effect on plaintiff's future earning capacity demonstrate that its decision to award JLB to plaintiff was based on "general principles of equity" in light of the facts. *Sparks*, 440 Mich at 159-160. Under the circumstances, we are not left with a firm conviction that awarding JLB to plaintiff was inequitable.

Defendant next cites *Olson*, 256 Mich App at 627, in support of her assertion that the trial court erred when it failed to provide specific values for JLB, the parties' home, and their personal property. Defendant is correct that, when values are in dispute, the trial court must ordinarily make such a factual finding. *Id*. However, in *Olson*, the Court also noted that such a finding is not always necessary, stating:

> The actual value may not always be in dispute. A court could, for example, order the sale of a marital home (if that is an option in the case) without determining its value and splitting whatever equity exists in the house between the parties. [*Id*. at 627 n 5.]

Here, defendant's assertion that the trial court erred by failing to properly place a value on JLB is without merit. As discussed above, Cooper's valuation of $195,100 for JLB was introduced by both parties and both parties subsequently agreed that the business was worth $480,000 at the time of trial. Both parties also agreed that JLB owed a debt of $83,000 to OHD Lansing. Thus, the value of the company was not in dispute.

Defendant raises similar arguments concerning the valuation of the parties' vehicles and other personal property. However, defendant fails to mention the lengthy discussions between the parties and counsel concerning admissions and agreements about the value of these items. Similarly, the parties agreed upon the appraisal of the parties' home. Therefore, consistent with the principle that defense "[c]ounsel may not harbor error as an appellate parachute," *Dresselhouse v Chrysler Corp*, 177 Mich App 470, 477; 442 NW2d 705 (1989), defendant has waived review of any claim that the trial court erred by failing to provide findings concerning the value of the parties' home and personal property. Moreover, given that the trial court ordered the sale of the home and personal property and the proceeds to be split evenly, the actual value of these items is not materially relevant.

Next, defendant argues that the trial court erred in its distribution of the parties' investment accounts. She maintains both that the trial court erred in failing to value the accounts, and also erred in splitting the accounts equally without determining what portion of these assets were premarital.

Appellant misreads the trial court's order concerning these accounts. With respect to the investment accounts, the trial court held:

> The investment/retirement accounts shall be split equally by the parties, and the appropriate orders shall be drafted and entered within 30 days of the date of this opinion, and the cost of preparing these orders shall be shared equally by the parties. The appropriate orders shall divide the accounts 50/50 of all of the contributions, and gains/losses accumulated during the term of the marriage. The date to be used in determining the value of the accounts shall be the date of the filing of the complaint for divorce.

The trial court further found that plaintiff was to replace one-half of the monies he removed from the T. Rowe Price account during the divorce proceedings with proceeds from the auction of other personal property. Therefore, contrary to defendant's assertion, the trial court awarded the parties only contributions, gains or losses accumulated during the marriage. The actual monies in the accounts as of the date of the filing of the complaint were not questions of fact to be determined by the court, unlike the value of other personal property. In addition, during trial the parties appeared to agree on what was in the accounts, even as they disagreed about how the appreciation in the accounts should be distributed and how plaintiff's actions after the divorce was filed should affect the division. The division itself was in keeping with defendant's own arguments concerning the appropriate division of separate property to which the parties contributed during the marriage. In short, defendant has failed to show that the division of the accounts was inequitable.

Affirmed. Plaintiff having prevailed in full, may tax costs. MCR 7.219(A).


/s/ Patrick M. Meter
/s/ Stephen L. Borrello
/s/ Jane M. Beckering