# STATE OF MICHIGAN

# COURT OF APPEALS

ELIZABETH K. GEIVETT,

Plaintiff-Appellee,

v

DAVID M. GEIVETT,

Defendant-Appellant.

UNPUBLISHED
May 29, 2018

No. 338319
Allegan Circuit Court
LC No. 16-056118-DO

Before: GLEICHER, P.J., and M. J. KELLY and CAMERON, JJ.

PER CURIAM.

The circuit court entered a default judgment of divorce ordering David Geivett to pay Elizabeth Geivett $2,000 in spousal support each month, granting Elizabeth half of David's retirement accounts, and awarding her certain personal property valued at nearly $40,000. The default entered despite that David had inadequate or untimely notice of critical orders entered in the proceedings. Moreover, the court denied David's right to counsel at the hearing at which spousal support was calculated and property divided. The deprivation of David's rights to due process and counsel compel us to vacate the spousal support and property division provisions of the default judgment of divorce and remand for further proceedings.

I

Elizabeth Geivett personally served divorce papers on David Geivett on February 24, 2016. David did not respond, allegedly because he believed he and Elizabeth would resolve matters amicably. David was wrong. Elizabeth secured a default against him on March 28. Elizabeth waited until April 22 to attempt to serve David by mail with the default, a motion for the entry of a default judgment of divorce, and a proposed judgment. Elizabeth sent the documents to an address that David had vacated 14 months earlier and the package was returned as undeliverable. Finally, on April 27, Elizabeth's attorney, Margaret Webb, emailed the documents to David. Only then did David realize the divorce would not be as easy as he anticipated. He retained counsel.

On May 4, 2016, David's newly retained attorney, Michael Villar, filed an appearance and an "objection" to the default notice and the terms in the proposed default judgment. David complained that Elizabeth knew she had employed an outdated address, served him by email only 11 (rather than 14) days before the hearing, and inequitably calculated spousal support and

-1-

the property division based on David's gross salary. David was a self-employed, long-distance truck driver with significant business expenses, which reduced his income by half.

Ultimately, the trial court indicated that it would enter Elizabeth's default judgment as David had not actually sought to set aside the default. After the court made its ruling, Webb inquired, "Would you like to call [my client] up because we were set for a" hearing. The court replied, "No, you can get a pro con hearing." The court did not set a date for the pro con hearing on the record and there is no order setting a hearing date in the lower court record. Instead, the docket sheet indicates that on May 9, 2016, the court "set next date for . . . pro confesso hearing" on May 26. May 12 record entries indicate that the hearing was rescheduled to June 9.

Two days after the court's hearing on his "objection," David corrected his mistake filed a motion to set aside the default. David claimed he had good cause for failing to participate in the proceedings earlier. Specifically, David asserted that he did not answer the complaint because he thought he and Elizabeth could work out the details of the divorce together outside of court. He did not earlier seek to set aside the default, David explained, because he did not receive timely notice. Moreover, David claimed, he had a meritorious defense to the inequitable spousal support award and property division in the default divorce judgment—his net income figures.

On June 6, three days before the scheduled pro con hearing, Villar appeared to argue the motion to set aside the default. David was not present as he was travelling for work, but could be patched in by phone. At the hearing, Villar complained that neither he nor his client had received notice of the pro con hearing. As to Villar, the court stated, "I don't think you're entitled to one. . . . [Y]our appearance is valueless unless you file a motion to set aside the default." As to David, the court indicated, "If you were in default why should you get a notice of a pro con?"

Villar proceeded to argue the motion to set aside the default, noting that spousal support was incorrectly calculated by using David's gross income of $213,392. David's net income for 2015 was negative $4,000, because he had to buy a new truck. And usually his net income fluctuated between $90,000 and $125,000 due to his business expenses. Accordingly, the calculated $4,860 monthly support for 9.7 years was unfair. As to the proposed property settlement, Villar complained that certain items were valued too high.

Webb retorted that the default judgment was not inequitable as Elizabeth requested only $2,000 in monthly support, $1,000 less than David had been providing since their January 2014 separation. David could later seek modification of the support order through the Friend of the Court, Webb continued, but in the meantime David was a defaulted party who "shouldn't even be here." Elizabeth further asserted that David never gave her an updated address so she properly served the default at his last known address.

The court agreed to hold "an evidentiary hearing on spousal support and its calculation" at David's expense. The court ordered David to present his tax returns for the past five years within 21 days and "to pay a minimum of three hours of [Webb's] time for that hearing." Moreover, the court instructed, "he'll have to prove before that hearing starts that he officially notified [Elizabeth] in some fashion of his true address." If the court had evidence that Elizabeth purposely served David at the wrong address, the court noted that it would set aside the default.

David's presentation of good cause to set aside the default hung in a "precarious position," the court reiterated, but he had established a meritorious defense to the calculation of spousal support. The court found it "grossly inequitable to saddle [David] with spousal support based on a gross calculation when he's an over the road independent truck driver."

Given the inequity, the court granted David an evidentiary hearing regarding the calculation of spousal support and cancelled the June 9 pro con hearing. The court's evidentiary hearing was subject to four conditions:

(1) David was required to pay Webb $220 an hour "up to 3 hours for testimony on the spousal support calculation issue."

(2) David had to "demonstrate before that hearing begins that he had notified [Elizabeth] in some fashion of his accurate address." If it turned into a credibility contest and the court deemed the parties equally credible, the court indicated that it would deny the hearing.

(3) Of greatest concern, the court stated that although it was "setting aside the default," it was "not reinstating [David's] right to have counsel assist him at that hearing. He'll be representing himself pro per at that hearing on account of his default." The court stated that it would permit counsel "to consult with the client during that hearing periodically" during "brief recess[es]," "but he's not going to be representing him and advocating and arguing. I'm not setting aside the default to allow that."

(4) David was required to present his past five years' tax returns with all schedules.

Villar objected, "I am his attorney of record and if he has an attorney I don't understand why he wouldn't be allowed to have that attorney represent him at the hearing." The court directed counsel to appeal if he did not agree, and reiterated:

> You can't object to questions, you can't make questions. You can't make argument opening or closing. You can assist your client during recesses. He's going to advocate for himself because he chose not to retain an attorney in a timely fashion and we would have avoided all of this confusion at the end of the case.

Upon Villar's request for clarification that the default was only "temporarily" set aside, the court indicated:

> Yes. And if I find at the outset of the hearing that [David] cannot prove that he had given [Elizabeth] an accurate address the hearing will be quashed and the pro con will occur without his participation at all . . . .

* * *

> Call it conditional grant of the motion to set aside the default only as to the issue of spousal support and not otherwise, and only on the conditions I expressed.

-3-

The court concluded by directing Webb to draft the order. Webb subsequently did so and presented the order to the court. The court signed it on July 1, 2016. However, neither Webb nor the court served the signed order on David or Villar or notified them in any way that the order had been signed. Concerned about the lack of action, Villar prepared his own order on August 5.

On August 25, the date scheduled for the evidentiary hearing, the court asked Villar whether David had met the preconditions set by the court. Villar responded that he never received either a proposed or signed order from Webb despite that she submitted a proof of service to the court for the proposed order. He first saw the order that day. Villar informed the court that he therefore submitted his own orders on August 5. The court interjected, "Before we wade into all these merits about the orders and the status of orders since the hearings I had an impression you want to file a motion to disqualify me. If so, we should deal with that first." Villar noted that he had wanted to file a motion for reconsideration of the court's rulings at the June 6 hearing or an interlocutory appeal, especially the decision to deny David counsel at the evidentiary hearing, but that he never received the signed order to do so. The court indicated that it would allow Villar to argue his reconsideration motion at that time, but Villar was not "prepared to go forward." Moreover, Villar asserted, he believed the court would simply deny the motion.

As the hearing proceeded, Webb acknowledged that there was no proof of service for the court's July 1 signed order. However, she contended, the failure to serve the signed order did "not invalidate the order." Rather, there was a proof of service regarding the proposed order. Defense counsel was obligated by the court rules to object within seven days. As he did not do so, he should have expected the proposed order to enter as is. Moreover, Webb argued, Villar was present at the previous hearing and heard the court's conditions stated on the record. He was therefore on notice. The court subsequently inquired why Villar did not contact the court to follow up and determine if an order had been entered after the June 6 hearing. Counsel replied:

[S]he had an obligation to mail that to me to let me know that that had been entered. That's how it works. We're not required to call the court every day to see if something has been filed when there's an obligation on their side to send me a copy of the order once it's signed.

Webb then contended that David's objections and complaints were useless. As David had not met any of the preconditions for the evidentiary hearing, the hearing should be denied and David would not be allowed to appear at all, with or without counsel. Specifically, Webb argued, David had not paid her attorney fees, had not presented his tax returns, and had no evidence to prove that he verbally informed Elizabeth of his new address beyond his own word. Villar retorted that his client had no duty to comply with the court's conditions until Elizabeth served the signed order upon him. His failure to act, therefore, was not dispositive.

The court compromised, accepting as true that service was not provided, and allowed David to file a motion for reconsideration of its July 1 order. However, the court decided "to hear some testimony about whether the conditions were met so that [it could] determine whether [David] qualifies for this evidentiary hearing." But again, Villar asserted that he did not receive a copy of the order and he "assum[ed] that [he] had 21 days from the order to meet those

-4-

conditions." Accordingly, David had not complied. David had brought his tax returns for four years, but not for 2015 as he was still working on it. David had not paid Webb because the court indicated that it would only charge David for the hours spent at the hearing, something that could not be importuned before the hearing. David also had not presented any evidence to his attorney supporting that he had previously notified Elizabeth of his correct address. The court then reinstated the default for failure to comply.

The court moved on to David's motion to disqualify the trial judge, Judge Kevin W. Cronin. The court found the motion untimely as the grounds for disqualification arose at the June 6 hearing and David did not file his motion within 14 days of that hearing. The court made oral rulings to which David objected and he did not need to await a written order to seek the judge's removal. The court also rejected David's motion on the merits:

> There was a hearing on June 9th where the Court recognized [David's] default and gave him an extraordinary opportunity to participate in this evidentiary hearing subject to conditions which he has not met. He finds himself in this predicament why? Because he delayed so long I think essentially in deciding to hire an attorney that he entered the case in virtually the 11th hour.

The court finished by ruling:

> [David has] not adhered to the conditions set in the order of July 1. He's no longer entitled to participate in this hearing. His default is reinstated nunc pro tunc to the date the clerk's office entered it. At some point in the future if the motion to disqualify me is not reversed the default will move forward to a pro con hearing at a later date.

Following the hearing, Webb submitted a proposed order to the court. The court did not date the order upon signing; however, it is date stamped September 6, 2016. The court altered the proposed order by handwriting changes to the deadlines for various filings. In paragraph 5, the court limited David's right to file a motion for reconsideration of its order following the June 6 hearing. Elizabeth's proposed order provided that the right to file this motion was "preserved beginning from August 25, 2016." The court altered this to read, "preserved if filed by September 20, 2016." In the seventh paragraph, the court limited David's ability to request an appeal to September 20 as well. In a "Partial Order After Evidentiary Hearing," date stamped September 1, 2016, Elizabeth proposed that David have 21 days to file a motion for reconsideration of the signed July 1 order. The court altered that time limit to seven days, or September 8, 2016. Webb waited until September 22, 2016, after every deadline in the orders had passed, to serve these altered orders on David.

Villar subsequently filed a motion for reconsideration on October 12. He noted that the letter sent by Webb along with the court's orders was dated September 1, 2016. However, according to her proof of service, counsel did not mail the orders until September 22. One of the orders was not signed until September 6, making a September 1 posting date impossible. And Villar did not receive the orders until September 24. Villar argued that he had no way to know that the trial court would change the filing deadlines in Elizabeth's proposed orders and was shocked to discover that the deadlines expired before the orders were even mailed.

In the meantime, David's motion to disqualify Judge Cronin, remained pending. Chief Judge Margaret Zuzich Bakker heard the motion on December 6. The parties both learned for the first time at that hearing that Judge Cronin had signed an order for temporary spousal support since the last hearing date. Elizabeth had presented it as a proposed order but had requested a hearing; she did not intend for the order to be entered ex parte. Even so, Judge Cronin altered the order's heading to provide that it was "stipulated," and ordered David to pay Elizabeth $1,043 monthly.

In relation to the disqualification motion, Elizabeth contended that there was no evidence of bias as the court actually allowed David additional time and opportunity to rectify his procedural errors. She asserted that David was not prejudiced by late receipt of the court's orders following the August 25 hearing as the court was clear about these timeframes at the hearing. And the denial of counsel of issue was moot, Elizabeth insisted, as the default had been reentered and David had no right to appear in any capacity.

Judge Bakker expressed disagreement with certain of Judge Cronin's decisions:

> I don't agree with some of Judge Cronin's decisions in this case. I do not understand how a party could be represented by an attorney, but disallow that attorney to participate in proceedings. That is concerning. I don't think it's appropriate . . . . I don't agree with his decision to sign an order that says, "stipulated", when it clearly wasn't. And it wasn't even requested as an ex parte order.

But Judge Bakker also did not agree with Judge Cronin's decisions giving David additional opportunities to participate after his default. There was no evidence of judicial bias in favor of one party as some of the rulings negatively impacted David, but others negatively impacted Elizabeth. "There is clearly . . . reason to appeal," Judge Bakker emphasized, but insufficient evidence of actual bias to support judicial disqualification.

The court finally conducted a pro confesso hearing regarding the division of marital property and spousal support on February 15, 2017. David appeared without his attorney and explained, "He said he wasn't going to be able to talk so he said he didn't want to come so I said okay." Later in the proceeding, David lamented that Villar did not keep him fully and accurately informed regarding the proceedings.

Elizabeth took the stand and explained that although the spousal support prognosticator suggested an award of $4,860 monthly for 9.7 years, she wanted only $2,000 monthly for 10 years. She noted that since their January 2014 separation when David left the marital home, David had given her $3,000 monthly to pay the mortgage, property taxes, homeowner's and car insurance, and half of the utilities. At some point, David arranged to automatically pay the mortgage and escrow out of his personal account and forwarded Elizabeth the remainder of his voluntarily given monthly support. Elizabeth requested various items of personal property or their financial equivalent, which she self-valued at $38,273. She also requested half of David's IRA accounts, while she would retain the entirety of her own. This division was equitable, Elizabeth contended, because she had been a stay-at-home mother for 18 years, had only recently

reentered the workforce, and earned only $21,000 annually for her full-time work as a paraprofessional with the local school district.

The court called David as a witness. David testified that he was willing to pay $2,000 in monthly spousal support but thought the 10-year period was excessive. He noted that he had recently started earning less. He was then 40 years old and his "body has been breaking down," so he could no longer do the same level of manual labor. He therefore "had to get into something that was less lucrative and less taxing on [his] body," resulting in less financial gain.

At the close of the hearing, the court awarded Elizabeth $4,000 of a $16,000 tax credit that David actually had to recount into his income in the coming years. The court entered a modifiable spousal support award of $2,000 monthly for 10 years, but only to begin after the couple sold the marital home when David would no longer be responsible for household expenses. Until the sale, spousal support would be offset by David's maintenance payments. The court awarded Elizabeth her requested value for personal property and half of David's retirement accounts. In rendering this award, the court noted that it considered David's fault in the breakdown of the marriage—adultery—but that this was not the main driving factor.

Despite that David had criticized his attorney's representation, Villar filed a reconsideration motion after entry of the default divorce judgment. Villar again cited the denial of David's right to counsel and the inequity of the spousal support award and property division. The court deemed the motion cumulative and denied it. Villar then filed this appeal on David's behalf.

II

David now appeals the default judgment of divorce, noting the multitude of procedural errors that permeated the proceedings as well as the inequity of the awards. The most fundamental error in this case was the trial court's denial of David's right to counsel.

A civil defendant has a constitutional right to defend a lawsuit with the assistance of retained counsel. Const 1963, Art I, § 13 ("A suitor in any court of this state has the right to prosecute or defend his suit, either in his own proper person or by an attorney."). The Legislature codified this right as well in MCL 600.1430, which provides, "Every person of full age and sound mind, may prosecute or defend civil actions in any court by an attorney, or may, at his election, prosecute or defend civil actions in person."

David exercised his right to retain counsel and Villar filed a notice of appearance pursuant to MCR 2.117(B)(2). But the trial court interfered with David's constitutional right to retained counsel by demanding that he proceed in pro per. At oral argument, Elizabeth asserted that the court was permitted to limit David's right to counsel as a sanction for his default consistent with *Draggoo v Draggoo*, 223 Mich App 415; 566 NW2d 642 (1997). *Draggoo* does not stand for this proposition.

In *Draggoo*, 223 Mich App at 417-418, the defendant husband refused to participate in discovery. He ignored several court orders to produce documents and was jailed for contempt. Upon his release, the defendant fled the jurisdiction and remained in Florida until the day of trial without ever complying with the court's discovery orders. *Id*. at 418-419. When questioned by

the court, the defendant "admitted that he received a copy of the order . . ., but denied that he read it." *Id*. at 419. As a sanction for the defendant's purposeful and flagrant defiance of court orders, the court entered a default against him. Relevant to the trial that began that day, the court ordered " 'Mr. Draggoo and his lawyer to remain present in the courtroom . . . .' " *Id*. However, they were not permitted " 'to speak unless the court directs an inquiry to them.' " *Id*. Upon defense counsel's expression of confusion, the court clarified, " '[i]t's not going to allow you to do anything other than witness except as the Court directs specific questions toward you.' " *Id*. at 420. The court continued that as the defendant had been defaulted, it "would not permit cross-examination of the witness or objections for hearsay." *Id*.

In *Draggoo*, the defendant did not object based on a denial of counsel, but based on the loss of "his right to participate in the hearing." *Id*. The court responded that the default was permissible and that the defendant was protected, at least in part, because the court ordered the defendant and his attorney to remain in the courtroom " 'in the event that something comes up that the Court isn't sure about. . . .' " *Id*. at 421. The court could then " 'address a question with the idea that an equitable result regardless of Mr. Draggoo, would result in this case. . . .' " *Id*.

The defendant in *Draggoo* was not relieved of representation; his counsel continued to appear in court and contemporaneously advise his client as the trial proceeded. The defendant and his counsel's participation in the trial was limited, however, given the defendant's default. This case presents a completely different scenario. The court ordered David to proceed in pro per, with only brief respites to confer with Villar. Villar was not permitted to sit with David, and was thereby placed in a lesser position than even standby counsel. The trial court went too far and denied David his constitutional right to representation by retained counsel.

III

Equally troubling is the breakdown in notice in this case. Elizabeth, Webb, and the court repeatedly failed to serve orders on David and Villar in a timely fashion. Some service failures appear intentional, but at other times, counsel and the court seemed oblivious to their duties in this regard. As a result, David's ability to participate in the proceedings was severely impaired.

"Due process in civil cases generally requires notice of the nature of the proceedings, an opportunity to be heard in a meaningful time and manner, and an impartial decisionmaker." *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995).

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance[.] [*Mullane v Central Hanover Bank & Trust Co*, 339 US 306, 314; 70 S Ct 652; 94 L Ed 865 (1950) (citations omitted).]

"[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id*. at 315.

The first service failure in this case was the notice of default and proposed default judgment. MCR 2.107(B) requires service upon a party's attorney once the attorney has formally appeared. When Elizabeth filed and served the notice of default, David had not yet retained counsel. Elizabeth was therefore required to serve David directly. This could be accomplished through personal service, MCR 2.107(C)(2)(a), emailing documents after the recipient has filed a stipulation to accept service in that manner, MCR 2.107(C)(4), or leaving the documents "at the party's usual residence with some person of suitable age and discretion residing there." MCR 2.107(C)(2)(b). Service by mail may also be employed and is complete at the time of posting. MCR 2.107(C)(3). MCR 3.203(A)(1) more specifically provides in relation to domestic relations matters that service must be made "to a party's last known mailing address."

Elizabeth personally served the complaint on David. Yet, Elizabeth and Webb chose to mail the default. Even if Elizabeth had mailed the default to the correct address, this was a tactical decision. As a cross-country trucker, David is often gone for three weeks to a month at a time. Accordingly, Elizabeth knew that David likely would not receive the default in time to respond. As the notice of default was returned as undeliverable, however, Webb was required to attempt service in another manner. She chose email although David had not filed a stipulation to email service. Webb's email prompted David to retain counsel and file an objection to the default.[1] But the email was too late. A plaintiff must serve the defendant at least 14 days before the hearing with the default motion and a proposed default judgment. MCR 3.210(B)(4)(a). David did not receive the email notice until 11 days before the hearing.

The next service failure occurred following the May 9, 2016 hearing. The court indicated that it would schedule a pro confesso hearing. The court did so, off the record, and failed to notify David or Villar. At the June 6 hearing on David's motion to set aside the default, the court demonstrated a complete lack of knowledge regarding the notice due to a defaulted party. The court stated that as a defaulted party, neither David nor his counsel had the right to notice of the scheduled June 9 pro confesso hearing.

MCR 2.107(A)(1) provides that "every party who has filed a pleading, an appearance, or a motion must be served with a copy of every paper later filed in the action." Even after a default is entered against a defendant, "further service of papers" is required if the defendant "has filed an appearance or a written demand for service of papers." MCR 2.107(A)(2). The court informed David that his default eliminated Elizabeth's duty to serve further court orders

---

[1] Although labeled an "objection" to the default, the circuit court should have treated David's challenge as a motion to set aside the default. In the objection, David alleged good cause to set aside the default—the mailing of the notice to his former address and belated receipt of the notice by email—and a statement, although cursory only, that he could present evidence to show that the property settlement was inequitable.

upon him. This is false. MCR 3.210(B)(2)(e) provides: "A party in default must be served with the notice of default and *a copy of every paper later filed in the case* as provided by MCR 3.203, and the person serving the notice or other paper must file a proof of service with the court." (Emphasis added.)

Service failures continued after the June 6 hearing. The court directed Webb to draft an order outlining the various conditions precedent to setting aside the default. Webb filed a proof of service attesting that she mailed the proposed order to Villar. Villar's claim that he never received that proposed order is supported by the August 5 filing of his own proposed order. Even accepting that Villar actually received Webb's proposed order, Webb and Elizabeth were required to serve a copy of the signed order within seven days and file a proof of service with the court. MCR 2.602(D)(1). Elizabeth and Webb admittedly never did.

An order is not entered and does not take effect until it is signed. MCR 2.602(A)(2). As David and Villar never received the signed order outlining the prerequisites to setting aside the default, they were not on notice that their duties had been triggered. Accordingly, the court erred at the August 25 hearing by reinstating the default against David for not fulfilling the preconditions set forth in the July 1 order.

The parade of errors continued. Webb again prepared proposed orders for the court after the August 25 hearing. The court sua sponte altered the orders, something neither David nor Villar could have predicted. Webb then sat on the orders for 21 and 16 days before finally serving them on September 22, 2016. This again violated the seven-day service period in MCR 2.602(D)(1). And the failure to serve the altered orders violated David's right to due process as he was left without "required information" and "reasonable time" to respond. *Mullane*, 339 US at 314. As a result of the belated notice, David did not file his motion for reconsideration until October 21, beyond the court's set deadline, and the court never addressed it.

IV

As a result of the repeated failures to notify David of the nature of the proceedings against him and the denial of David's right to counsel, David was not permitted to participate in any meaningful way at the evidentiary hearing that was eventually held. The court awarded Elizabeth spousal support and divided the parties' marital property based completely on Elizabeth's version of the facts. David was not permitted to challenge Elizabeth's testimony or present his own witnesses or evidence. He was left with only his testimony elicited by the court and Webb, unable to fill in any blanks through questioning by his own counsel or even through his own narrative.

We are required to affirm a spousal support award "unless we are firmly convinced that it was inequitable." *Richards v Richards*, 310 Mich App 683, 690; 874 NW2d 704 (2015). Trial courts have discretion to award "just and reasonable" spousal support "to balance the needs and incomes of the parties so that neither party is impoverished" and to ensure each parties' "suitable maintenance." *Elahham v Al-Jabban*, 319 Mich App 112, 129; 899 NW2d 768 (2017) (quotation marks and citation omitted).

The circuit court could not determine whether the spousal award was equitable, just and reasonable, and necessary to balance the parties' incomes where one party was artificially precluded from presenting his case. We therefore must vacate the spousal support and property division provisions of the default judgment of divorce. On remand, the court must allow David an opportunity to meet the conditions set forth in the July 1 order. If David does not, the circuit court may reinstate the default against him. However, the court may not deprive David of the right to counsel. If David fulfills his obligations, the court should proceed to a hearing to consider the financial provisions of the Geivetts' divorce judgment.

We vacate in part the divorce judgment and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly
/s/ Thomas C. Cameron