*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DANA CHARIS FORT,

        Plaintiff-Appellee,

v

MICHAEL SKYLER FORT,

        Defendant-Appellant.

UNPUBLISHED
April 22, 2021

No. 351568
Leelanau Circuit Court
Family Division
LC No. 2017-010006-DM

Before: CAMERON, P.J., and K. F. KELLY and BOONSTRA, JJ.

PER CURIAM.

Defendant, Michael Skyler Fort, appeals a November 5, 2019 judgment of divorce. Defendant also challenges the trial court's December 7, 2018 order, which divided the marital assets and debts and served as the basis for the November 5, 2019 judgment of divorce. We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Plaintiff, Dana Charis Fort, and defendant were married in 2005 and had three children together during the marriage. In October 2017, plaintiff filed for divorce, seeking an equitable distribution of the marital estate, spousal and child support, attorney fees, and primary physical custody of the children. Defendant filed an answer, and discovery commenced. During discovery, the parties' real property was appraised; defendant's business, Fortified Coatings, LLC, was valued; and defendant's income was calculated. The parties later agreed to joint legal and physical custody of the children, with week on, week off parenting time, but disputed the amount of spousal support and child support that defendant should be ordered to pay plaintiff. The parties also disputed the valuation of some of the marital property.

On November 28, 2018, the trial court held a bench trial on the disputed issues. Plaintiff testified at trial that she had a bachelor of fine arts in metals and had worked as a bench jeweler before she married defendant. After the parties married, they agreed that plaintiff would primarily

-1-

be a stay-at-home mother. Plaintiff later started her own jewelry business with the financial assistance of defendant. Plaintiff testified that her business was growing slowly and that she had no desire to look for additional employment outside the home. Defendant testified that he was the sole owner of Fortified Coatings, which he had created during the marriage. Fortified Coatings was projected to earn $813,000 in revenue in 2018, but had substantial debt. Defendant also serviced much of his personal debt through the business. A qualified expert in business valuation valued Fortified Coatings' at $302,000 and estimated that defendant's income was $75,000 per year.

Without offering any analysis, the trial court entered an order on December 7, 2018, which estimated the value of the marital property and divided it evenly. Plaintiff was awarded the marital home and a $95,601.92 equalization payment that was to be made in 60 installments. Defendant was awarded a condominium, which had mainly been used as an investment property during the last few years of the parties' marriage. The trial court awarded plaintiff and defendant their respective businesses, estimating the value of plaintiff's business at $9,500 and the value of defendant's business at $302,000. The trial court also ordered defendant to pay $1,666 each month in spousal support for a period of five years and to pay the balance of an REI US Bank credit card. The issue of child support was "referred to the Friend of the Court caseworker with the provision that the Defendant's income [was] $75,000, Plaintiff's income [was] nominal and each party ha[d] 182.5 annual overnights."

Thereafter, the case was reassigned to a different judge, and a motion relating to the December 7, 2018 order was filed. After the motion was resolved, a judgment of divorce was entered on November 5, 2019. The judgment of divorce incorporated the awards contained in the December 7, 2018 order. The judgment also provided that plaintiff was "solely responsible for any liabilities or losses related to" the marital home and that the parties were responsible for paying their own attorney fees. This appeal followed.

## II. SPOUSAL SUPPORT AND DIVISION OF MARITAL PROPERTY

### A. STANDARDS OF REVIEW AND RELEVANT AUTHORITY

"This Court reviews a property distribution in a divorce case by first reviewing the trial court's factual findings for clear error, and then determining whether the dispositional ruling was fair and equitable in light of the facts." *Olson v Olson*, 256 Mich App 619, 622; 671 NW2d 64 (2003). "A finding is clearly erroneous if the appellate court, on all the evidence, is left with a definite and firm conviction that a mistake has been made." *Id*. at 629.

"The goal behind dividing marital property is to reach an equitable distribution in light of all the circumstances." *Washington v Washington*, 283 Mich App 667, 673; 770 NW2d 908 (2009). In other words, "[a]lthough marital property need not be divided equally, it must be divided equitably in light of a court's evaluation of the parties' contributions, faults and needs." *Richards v Richards*, 310 Mich App 683, 694; 874 NW2d 704 (2015). Our Supreme Court has

provided a list of factors "to be considered wherever they are relevant to the circumstances of the particular case," including the

> (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. [*Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992).]

"When dividing marital property, a trial court may also consider additional factors that are relevant to a particular case," and "[t]he trial court must consider all relevant factors but not assign disproportionate weight to any one circumstance." *Berger v Berger*, 277 Mich App 700, 717; 747 NW2d 336 (2008) (quotation marks and citation omitted). "[W]here a trial court's valuation of a marital asset is within the range established by the proofs, no clear error is present." *Jansen v Jansen*, 205 Mich App 169, 171; 517 NW2d 275 (1994).

Whether and to what extent to order spousal support is a matter committed to the trial court's discretion. *Loutts v Loutts*, 298 Mich App 21, 25; 826 NW2d 152 (2012). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Id*. at 26 (quotation marks and citation omitted). Courts do not apply a strict formula when calculating support; instead, "a trial court's decision to award spousal support is discretionary and should reflect what is just and reasonable under the circumstances of the case." *Id*. at 30 (quotation marks and citations omitted). Courts should consider:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Olson*, 256 Mich App at 631.]

"The trial court's decision regarding spousal support must be affirmed unless we are firmly convinced that it was inequitable." *Gates v Gates*, 256 Mich App 420, 433; 664 NW2d 231 (2003).

## B. ANALYSIS

In this case, defendant does not challenge the property division award or the spousal support award individually. Rather, defendant's argument is that the property award and the spousal support award, taken together, constitute an impermissible "double dip" that results in an inequitable outcome. " 'Double dipping'—or 'tapping the same dollars twice'—refers to situations where a business or professional practice is valued by capitalizing its income, some or all of which is also treated as income for spousal support purposes." *Loutts*, 298 Mich App at 26-27.

In *Loutts*, this Court addressed a double-dipping argument in the context of the amount of spousal support. *Id.* at 25-31. This Court noted that it had "previously addressed double-dipping in the context of pensions" and explained that those issues were resolved on a case-by-case basis. *Id.* at 28-29. Given that "[s]pousal support does not follow a strict formula" and that "there is no room for the application of any rigid and arbitrary formulas when determining the appropriate amount of spousal support," this Court "decline[d] to adopt a bright-line rule with respect to 'excess' income and h[e]ld that courts must employ a case-by-case approach when determining whether 'double-dipping' will achieve an outcome that is just and reasonable[.]" *Id.* at 30 (quotation marks and citation omitted).

This Court went on to explain that the trial court improperly "determined that the value of a business may be used for the purpose of *either* property distribution *or* spousal support, but not both." *Id.* at 31. Such a determination was erroneous because it resulted in "applying a bright-line test and failing to consider the specific facts and circumstances of th[e] case." *Id.* Thus, this Court remanded the case and directed the trial court to "redetermine spousal support . . ., including whether the equities . . . warrant[ed] utilizing the value of [the business] for purposes of both property division and spousal support." *Id.* Accordingly, based on the holding in *Loutts*, there is no bright-line rule for whether the value of a business can be used in determining property distribution and awarding spousal support. Instead, trial courts must consider what is equitable, i.e., what is just and reasonable under the circumstances.

It is unclear from the record in this case whether the trial court engaged in an inequitable "double-dip" by valuing Fortified Coatings for both the property division and the spousal support award. Although the trial court apparently accepted the expert evaluator's testimony by valuing Fortified Coatings at $302,000, the trial court did not explain how it calculated spousal support. Rather, the trial court simply placed a value on defendant's business and then ordered that defendant would pay $1,666 each month in spousal support for a period of five years. It is well settled that, at minimum, to determine a division of property and award of spousal support, "[t]he trial court should make specific factual findings regarding the factors that are relevant to the particular case." *Korth v Korth*, 256 Mich App 286, 289; 662 NW2d 111 (2003). See also *Sands v Sands*, 442 Mich 30, 35; 497 NW2d 493 (1993) (holding that, "[w]here any of the factors" concerning property division "are relevant to the value of the property or the needs of the parties, the trial court shall make specific findings of fact regarding those factors"). Because the trial court did not make factual findings concerning the relevant factors outlined in *Sparks* or *Olson*, or make findings concerning what was just and reasonable under the circumstances, we are not able to determine the equity of the trial court's decision. Therefore, it is necessary to remand to the trial court. On remand, the trial court must consider the relevant factors as they pertain to the parties and make specific findings of fact that justify the court's ultimate award of spousal support and division of property.

When making findings concerning the division of property on remand, the trial court must also make specific factual findings regarding the value of plaintiff's business. In the December 7, 2018 order, the trial court valued plaintiff's business at $9,500. However, no testimony in the record supports this valuation. Plaintiff testified that she had acquired a $900 tool during the marriage, had $2,000 in a business bank account, and had sold about $6,000 in jewelry in 2018. Plaintiff also testified that, if she sold all her pieces, she would earn between $17,000 and $36,680. The basis for the trial court's valuation of $9,500 is unclear from the record, as the trial court did

not offer any explanation for it. Additionally, it is not clear whether the trial court distinguished between marital property and separate property when evaluating the value of plaintiff's business. See *Reeves v Reeves*, 226 Mich App 490, 493-494; 575 NW2d 1 (1997) (holding that a trial court must distinguish between marital property and separate property when distributing property in a divorce). Therefore, we find it necessary to remand to the trial court so that it can make findings of fact concerning the value of plaintiff's business and, if necessary, consider redistribution of the marital assets.

Defendant also argues that the trial court erred by failing to order plaintiff to refinance the marital home and to remove defendant from the underlying mortgage. As already stated, the trial court awarded plaintiff the marital home and included in the judgment of divorce that plaintiff would be solely responsible for any liabilities or losses related to the marital home. The trial court further ordered that plaintiff "shall indemnify and hold Defendant harmless from any liabilities or losses." However, the trial court did not include a provision requiring plaintiff to refinance the mortgage in her name, despite the fact that both parties agreed that it would be appropriate to do so. Without specific findings made by the trial court, we cannot determine whether this was equitable in light of the circumstances. Therefore, on remand, the trial court shall make specific findings on this issue and order any appropriate relief.

## III. CHILD SUPPORT

Defendant next argues that the trial court erred by ruling, for purposes of child support, that plaintiff's income was nominal. According to defendant, the trial court should have imputed additional income based on plaintiff's capacity to earn more. We disagree. "We review a trial court's finding of facts underlying an award of child support for clear error." *Carlson v Carlson*, 293 Mich App 203, 205; 809 NW2d 612 (2011). "[W]e review a trial court's discretionary rulings, such as the decision to impute income to a party, for an abuse of discretion." *Id*.

"[T]he first step in determining a child-support award is to ascertain each parent's net income by considering all sources of income. In general, this is determined by ascertaining the actual resources of each parent." *Stallworth v Stallworth*, 275 Mich App 282, 284; 738 NW2d 264 (2007) (quotation marks and citations omitted). However, "Michigan caselaw permits a court to impute income to a parent on the basis of the parent's unexercised ability to pay when supported by adequate fact-finding that the parent has an actual ability and likelihood of earning the imputed income." *Id*. at 284-285. For example, a court may impute income to a parent when there is a voluntary "reduction of income or a voluntary unexercised ability to earn." *Id*. at 285 (quotation marks and citation omitted). However, the trial court's decision to impute income to a parent is discretionary, *id*., and special deference is given "to a trial court's findings when they are based on the credibility of the witnesses," *Draggoo v Draggoo*, 223 Mich App 415, 429; 566 NW2d 642 (1997).

In this case, the trial court did not abuse its discretion by refusing to impute additional income to plaintiff. Testimony supported that plaintiff, who had been a stay-at-home-mother for a majority of her marriage to defendant, was building a jewelry business. Plaintiff testified that she was selling jewelry very slowly and had only made about $6,000 in 2018. Although plaintiff agreed that she could work at an entry-level job, no testimony was offered to establish what income plaintiff could earn or that she could find employment. Overall, we conclude that the trial court

did not clearly err by finding that plaintiff's income was nominal and did not abuse its discretion by failing to impute additional income to plaintiff.

## IV. ATTORNEY FEES

Defendant next argues that the trial court abused its discretion by ordering him to pay the balance of a credit card that included plaintiff's attorney fees. "We review a trial court's decision whether to award attorney fees for an abuse of discretion, the trial court's findings for clear error, and any questions of law de novo." *Loutts*, 298 Mich App at 24.

"Under the 'American rule,' attorney fees are not recoverable as an element of costs or damages unless expressly allowed by statute, court rule, common-law exception, or contract. In domestic relations cases, attorney fees are authorized by both statute, MCL 552.13, and court rule, MCR 3.206[(D)]." *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005) (citations omitted). "A party to a divorce action may be ordered to pay the other party's reasonable attorney fees if the record supports a finding that such financial assistance is necessary to enable the other party to defend or prosecute the action." *Borowsky v Borowsky*, 273 Mich App 666, 687; 733 NW2d 71 (2007) (quotation marks and citation omitted). Stated differently, "[e]ither by statute or court rule, attorney fees in a divorce action may be awarded only when a party needs financial assistance to prosecute or defend the suit." *Reed*, 265 Mich App at 164.

In this case, although plaintiff requested that defendant pay her attorney fees and provided testimony as to why such relief would be proper, the trial court did not find that plaintiff required financial assistance to prosecute the divorce action. Instead, the trial court specifically ordered that "each party shall be responsible for payment of his or her own attorney fees and costs incurred with proceeding with the instant action for divorce without contribution from the other party." However, the trial court ordered that defendant would be solely responsible for paying the entirety of the REI credit card balance. This occurred despite the fact that plaintiff testified that she had repeatedly charged her attorney fees to the REI credit card that was in defendant's name. Plaintiff also acknowledged that she did so despite defendant and his counsel instructing her to stop using the credit card in that manner. The record is unclear whether the order for defendant to pay the entirety of the card's balance also encompassed plaintiff's attorney fees, which would contradict the plain language in the judgment of divorce that each party would be responsible for their own attorney fees. Therefore, we vacate the portion of the December 7, 2018 order and the November 5, 2019 judgment requiring defendant to pay the balance of the REI credit card. On remand, the trial court shall determine whether the parties shall continue to be responsible for payment of their own attorney fees and calculate the payment of the REI credit card consistent with that determination.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Kirsten Frank Kelly
/s/ Mark T. Boonstra