*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JULIA BROEDELL,

      Plaintiff-Appellee,

v

LAWRENCE BROEDELL,

      Defendant-Appellant.

UNPUBLISHED
February 21, 2023

No. 359737
Otsego Circuit Court
Family Division
LC No. 20-018185-DO

Before: JANSEN, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

Defendant appeals as of right the judgment of divorce, raising issues regarding the trial court's division of property and its findings that certain property was the separate property of plaintiff. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

The relevant facts are generally undisputed. The parties first married in Indiana in 2009, separated in 2017, and divorced on June 20, 2018. The Indiana dissolution decree awarded plaintiff as her separate property the marital home (the "Paoli property") that she had brought into the marriage. Defendant's name was added to the deed for the Paoli property during the marriage.

On July 7, 2018, the parties remarried. According to plaintiff, she was "for marriage" and thought "maybe now it will work" because defendant assured her that he had stopped using drugs and smoking and would be baptized. At that time, a personal protection order obtained by plaintiff while the divorce was pending remained in existence and prohibited defendant from being on the Paoli property. Consequently, the parties resided until November 2018 in a "shed" on defendant's property in Salem, Indiana, that he purchased after the parties' separation. Plaintiff continued to pay the expenses for the Paoli property from her separate account.

On October 31, 2018, plaintiff was injured in an automobile accident. She filed a personal injury lawsuit and received settlement proceeds of approximately $25,000. According to plaintiff, the settlement was not for lost wages. She anticipated medical bills of at least $19,000. She had

permanent weakness in her left arm after the accident, but continued to drive "up to 300 miles per week" for the parties' produce business.

In November 2018, the parties went to Florida, where they would sell produce during the winter months. While they were in Florida, someone expressed interest in purchasing the Paoli property. The Paoli property was sold for $275,000, and the parties returned to Indiana in July 2019 to close the sale. The net proceeds of $271,678.40 were deposited into a new joint bank account at Regions Bank in Indiana, where defendant did his banking.[1] The parties returned to Florida after the closing and remained there until September 2019, when they returned to Indiana so defendant could have surgery to remove a cancerous kidney.[2]

In October 2019, the parties purchased a home on Big Lake in Gaylord (the "Big Lake property") for $190,000, using funds from the sale of the Paoli property that had been deposited into the joint account at Regions Bank.[3] The Big Lake property was conveyed by warranty deed to both parties. The parties moved to the Big Lake property on October 22, 2019. The parties discussed improvements to the Big Lake property, including a pole barn and trapezoid windows on the side of the home overlooking the lake.

According to plaintiff, defendant's behavior changed in December 2019. He flew into rages that lasted from half an hour to an hour several times a day and would scream and yell at her. Defendant caused plaintiff distress by insisting on driving her to physical therapy appointments because he had begun using drugs "at a higher level" and he had not had a driver's license since 1997. Plaintiff decided to leave defendant because his use of swear words "changed to a level" she could not tolerate and she became suicidal. On December 22, 2019, plaintiff arranged for her adult son to pick her up from the Big Lake property while defendant was not at home. Plaintiff left the home without any money and with few of her personal belongings.

On December 26, 2019, defendant removed $43,000 of the funds remaining in the joint account at Regions Bank, leaving a balance of $354.99. Defendant deposited the funds into his separate account at Huntington Bank in Gaylord. According to defendant, he used the funds to make improvements to the Big Lake property, including the addition of a pole barn and the installation of trapezoid windows as he and plaintiff had previously discussed, as well as additional improvements that he unilaterally decided to make. The Big Lake property was sold in March

---

[1] According to plaintiff, she agreed to deposit the proceeds into the joint account because she was afraid that she would suffer the repercussions she suffered during the first marriage if she protested, and "was afraid of physical results that would lead to death" if she did not put the money into the joint account.

[2] Because defendant had obtained only one debit card for the joint account for himself and did not obtain checks for the account, plaintiff did not have her own access to the funds in the joint account while the parties were in Florida.

[3] After the purchase of the Big Lake property, the balance in the joint account at Regions Bank was $49,168.48.

2021 for $330,000. Each party was given $40,000 at closing, with the remaining $230,000 in proceeds being placed in escrow.

The primary disputes at trial involved the proceeds from the sale of the Big Lake property, the proceeds from plaintiff's personal injury settlement, and the funds that defendant removed from the joint account at Regions Bank and deposited into his separate account at Huntington Bank. Plaintiff maintained that the Big Lake property was purchased with funds from the sale of the Paoli property that had been awarded to her as separate property in the Indiana divorce, and that she should be awarded $190,000 from the sale of the Big Lake property as her separate property. She maintained that the remaining $40,000 of the proceeds from the sale should be applied to the joint credit card debt, and that any remaining proceeds be split between the parties. Plaintiff also argued that she should be awarded one-half of the $43,000 that defendant removed from the joint account at Regions Bank. Plaintiff maintained that she did not approve all of the improvements that defendant made to the property with the funds he removed from the joint account and that, in any event, the funds used to make the improvements were her separate property from the sale of the Paoli property. Plaintiff also maintained that she should be awarded as her separate property at least $19,000 from the $25,000 proceeds of her personal injury settlement to pay medical expenses.

Defendant contended that the proceeds from the sale of the Paoli property became marital property when the proceeds were deposited into the joint account at Regions Bank. He therefore contended that the Big Lake property was purchased with marital funds and that the $230,000 escrowed funds from the sale of the Big Lake property should be divided equally. Defendant further contended that if the court determined that the proceeds from the sale of the Big Lake property were plaintiff's separate property, he was entitled to invade her separate property under MCL 552.23(1) because he had no means to support himself, or, alternatively, under MCL 552.401 because his efforts to improve the Big Lake property resulted in the increase in the property's value. Defendant further contended that the proceeds from plaintiff's personal injury settlement were for replacement of lost wages and that he should be awarded $7,500 from the settlement for attendant care that he provided when he drove plaintiff to physical therapy appointments for two months in Gaylord. Defendant agreed that credit card debt incurred for the parties' produce business was marital debt and should be divided equally.

The trial court issued a detailed written opinion and order. The court found that the funds used to purchase the Big Lake property came from the sale of plaintiff's separate property and that under the circumstances the use of plaintiff's separate property to purchase the home was not a "commingling."[4] The court therefore found that $190,000 of the funds in escrow from the sale of

---

[4] The court alternatively found that even if the Big Lake property were to be considered marital property because it was purchased during the marriage and both parties' names were on the deed, it would be inequitable, on the basis of the evidence and the relevant factors in *Sparks v Sparks*, 440 Mich 141, 151-152; 485 NW2d 893 (1992), to "require the Plaintiff to essentially give the Defendant $95,000 under these circumstances." The court found "the factors relating to the relations and conduct of the parties to be particularly relevant." The court found plaintiff's testimony that she left the second marriage because of defendant's verbal abuse and because she

the Big Lake property was plaintiff's separate property. The court also found that defendant was not a party to plaintiff's personal injury lawsuit and there was no evidence that the proceeds from plaintiff's personal injury settlement were for lost wages. The court found that the settlement proceeds were plaintiff's separate property.

The court found with respect to the funds remaining in the Regions Bank joint account at the time of separation that defendant wrongfully removed $43,000 from the account and that plaintiff was entitled to one-half of the funds. The court also found that plaintiff was forced to pay reasonable expenditures for costs of living in the amount of $5,170.33 using her credit card because defendant prevented her from accessing the funds in the Regions Bank account and that plaintiff was entitled to reimbursement of this amount. The court found that the evidence established that defendant made improvements to the Big Lake property in the amount of $30,203.65, from which plaintiff benefited, and that defendant was entitled to receive contribution of half of that amount from plaintiff.

The court found that each party was entitled to one-half of the $40,000 equity remaining in escrow from the sale of the Big Lake property. The court found that marital and produce business expenses of $29,613.88 were charged to plaintiff's credit cards, and each party was responsible for one-half of that marital debt. The court found that plaintiff was responsible for the amount of credit card debt attributable to her personal expenses. The court entered a judgment incorporating the court's findings and conclusions.

## II. STANDARD OF REVIEW

"In granting a divorce judgment, the trial court must make findings of fact and dispositional rulings." *Reed v Reed*, 265 Mich App 131, 150; 693 NW2d 825 (2005). "This Court reviews a property distribution in a divorce case by first reviewing the trial court's factual findings for clear error, and then determining whether the dispositional ruling was fair and equitable in light of the facts." *Olson v Olson*, 256 Mich App 619, 622; 671 NW2d 64 (2003). "A finding is clearly erroneous if, after reviewing the entire record, we are left with the definite and firm conviction that a mistake was made." *Loutts v Loutts*, 298 Mich App 21, 26; 826 NW2d 152 (2012). The appellant has the burden to persuade the reviewing court that a mistake has been committed, failing which the trial court's findings may not be overturned. *Beason v Beason*, 435 Mich 791, 804; 460 NW2d 207 (1990). If the trial court's findings are not clearly erroneous, the reviewing court must then decide whether the dispositional ruling was fair and equitable in light of the facts. *Sparks v Sparks*, 440 Mich 141, 151-152; 485 NW2d 893 (1992). The trial court's dispositional ruling must be affirmed unless the reviewing court is firmly convinced that it was inequitable. *Id.* at 152. In a divorce action, this Court gives special deference to a trial court's findings when based on the credibility of the witnesses. *Draggoo v Draggoo*, 223 Mich App 415, 429; 566 NW2d 642 (1997). "We review for clear error a trial [court's] findings of fact regarding whether a particular asset

_____

feared him and his temper to be credible and "frankly, a justifiable reason for severing the relationship. The Court finds that the Defendant's behavior was the most significant cause of the break-up of the marriage and therefore is another reason why he should not be entitled to [sic] share of the $190,000."

qualifies as marital or separate property." *Woodington v Shokoohi*, 288 Mich App 352, 357; 792 NW2d 63 (2010).

## III. ANALYSIS

## A. SEPARATE PROPERTY

Prior to dividing assets, the trial court must determine what is marital property and what is separate property. *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010). "Generally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage." *Id*. at 201. "[W]hen the marital estate is divided each party takes away from the marriage that party's own separate estate with no invasion by the other party." *Id*. (quotation marks and citation omitted). The marital property is then apportioned "between the parties in a manner that is equitable in light of all the circumstances." *Id*. Generally, each party takes their own separate property. *Id*.; *Reeves v Reeves*, 226 Mich App 490, 494; 575 NW2d 1 (1997). Separate assets may become marital property if the assets are commingled with marital assets and are treated as marital property by the parties. *Pickering v Pickering*, 268 Mich App 1, 12-13; 706 NW2d 835 (2005). "The mere fact that property may be held jointly or individually is not necessarily dispositive of whether the property is classified as separate or marital." *Cunningham*, 289 Mich App at 201-202. "The actions and course of conduct taken by the parties are the clearest indicia of whether property is treated or considered as marital, rather than separate, property." *Id*. at 209.

Defendant first argues that the trial court clearly erred by finding that the proceeds from the sale of the Paoli property that were used to purchase the Big Lake property were plaintiff's separate property and, therefore, that $190,000 of the proceeds from the sale of the Big Lake property was plaintiff's separate property. Defendant argues that the proceeds from the sale of the Paoli property became marital property when the proceeds were deposited in a joint account from which the funds were withdrawn to purchase the jointly titled Big Lake property. Under the circumstances of this case, we disagree.

There is no dispute that the Paoli property was plaintiff's separate property, having been awarded to her in the 2018 divorce as her separate property that she brought into the first marriage. Plaintiff paid the expenses related to the Paoli property until the property was sold in July 2019. The $271,678.40 proceeds from the sale of the Paoli property were placed into a new joint account at defendant's bank in Indiana. There was no evidence presented to establish that the proceeds were commingled with any marital funds when the joint account was opened. Although defendant testified that he deposited produce sale proceeds into the joint account, no documentary evidence was presented that additional deposits to the account were made or that defendant contributed funds to the account. The joint account was opened in July 2019, and the parties remained in Florida until September 2019. On September 27, 2019, the balance in the joint account had decreased to $245,522.99. On October 17, 2019, $190,000 was withdrawn from the joint account to finance the purchase of the Big Lake property. While evidence was presented that the parties intended that the Big Lake property would be the primary marital home and that the property was titled in both parties' names, the Big Lake property was used as the marital home from only October 22, 2019, until December 22, 2019. Under these circumstances, the trial court did not clearly err by finding that the funds used to purchase the Big Lake property were plaintiff's

separate property and that, given the short duration of any marital use of the Big Lake property, "the use of Plaintiff's separate property to purchase the home was not a 'commingling' of the property[.]"

## B. PLAINTIFF'S PERSONAL INJURY SETTLEMENT

Defendant next argues that the trial court clearly erred by finding that plaintiff's personal injury settlement was plaintiff's separate property. We disagree.

It is well established under Michigan law that one spouse's personal injury settlement, meant to recompense that spouse for pain and suffering, is that spouse's separate property. *Washington v Washington*, 283 Mich App 667, 674; 770 NW2d 908 (2009); *Pickering*, 268 Mich App at 10-11. A personal injury settlement may be treated as marital property where the original action included a loss of consortium claim and the settlement check was made payable to both parties and treated by the parties as marital property. *Wilson v Wilson*, 179 Mich App 519, 521, 524; 446 NW2d 496 (1989).

In this case, plaintiff's personal injury action arising from her automobile accident was brought in her name alone. Plaintiff testified that the settlement was not for lost wages. The settlement check was made payable to plaintiff. Defendant did not present any evidence to support his claim that the settlement was in compensation for lost wages. The trial court did not clearly err by finding that the personal injury settlement was plaintiff's separate property.[5]

## C. DIVISION OF MARITAL PROPERTY

Defendant argues that the trial court's division of the marital property was not fair and equitable. We disagree.

A trial court's goal when dividing the marital estate is to arrive at an equitable division of the property considering the specific circumstances of the case. *Seifeddine v Jaber*, 327 Mich App 514, 522; 934 NW2d 64 (2019). While "mathematical equality" is not required, the court must explain "any significant departure from congruence." *Id.* The court may also weigh the following factors in dividing the marital estate:

> (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8)

---

[5] The trial court also rejected defendant's claim that he should receive $7,500 for driving plaintiff to physical therapy appointments. The court noted that plaintiff testified that "this caused more stress and more problems in the marriage because the Defendant did not have a license and was therefore driving illegally." Whether defendant would have had a viable claim for attendant care benefits under an applicable insurance policy is not relevant to whether the personal injury settlement was plaintiff's separate property.

past relations and conduct of the parties, and (9) general principles of equity. [*Sparks*, 440 Mich at 160-161.]

We initially note that when considering only the property the court found to be marital property and the debts the court found to be marital debts, the property division is roughly congruent. Each party was given $40,000 at closing from the sale of the Big Lake property. The court found that each party was entitled to one-half of the funds in the joint account at the time plaintiff left defendant. The court found that each party was entitled to one-half of the $40,000 remaining in escrow from the sale of the Big Lake property. Each party was held responsible for one-half of the marital credit card debt. Plaintiff was found responsible for one-half of the costs that defendant incurred in improving the Big Lake property even though the funds for the improvements came from the proceeds of the sale of the Paoli property that the court determined defendant wrongfully removed from the joint account. Each party was awarded their personal property as well as any attendant debt associated with the personal property.

Despite this congruence, defendant argues that the trial court did not "clearly articulate" its view of some of the *Sparks* factors. The trial court is not required to make findings of fact on every *Sparks* factor. *Sparks*, 440 Mich at 159. However, if "any of the factors delineated in this opinion are relevant to the value of the property or to the needs of the parties, the trial court shall make specific findings of fact regarding those factors." *Id.*

Defendant first argues that the court accurately viewed the marriage as "extremely short in duration," but he contends that the court should have acknowledged that the parties had a prior nine-year marriage. Defendant concedes that the court's finding was "accurate." He offers no legal authority for the contention that the court should have considered the duration of the parties' previous marriage, which ended with a dissolution decree and property division.

Defendant next argues that the court failed to consider *defendant's* age and health. This factor, however, concerns the age and health of *the parties*. Defendant asserts that the trial testimony revealed that he is in his 60s, fighting cancer, and his income is "based almost exclusively on his Social Security of $350.00 a month." He asserts that "he finds himself without the necessities of life and no way to support himself." We first note that trial testimony established that defendant received monthly Social Security income of $552, not $350. While testimony established that defendant is in his 60s, testimony also established that plaintiff is a retired nurse in her 70s and 10 years older than defendant. The testimony established that defendant had a cancerous kidney removed in 2019, but no testimony was presented to support his assertion that he was "fighting cancer" at the time of trial or that cancer prevented him from earning income. When asked during trial about the status of his current health, defendant said only that he was following up with a cardiologist and that his kidney doctor wanted to check his kidneys. Defendant testified that he could no longer work as a plumber because of his knees and back, yet he testified that much of the work he did to improve the Big Lake property was "heavy duty." Additionally, defendant testified that he had recently purchased a $51,000 truck to use for his produce business, which suggests that defendant anticipated continued earnings from the produce business. Defendant did not present sufficient proof of any physical impairment such that he could not earn income.

-7-

Defendant also argues that the trial court gave disproportionate weight to the element of fault in the breakdown of the marriage when it awarded plaintiff "all of the remaining funds" in the joint account. However, the court did not award plaintiff the entirety of the $43,000 that defendant removed from the joint account. Rather, the court found that plaintiff was entitled to one-half of those funds. The court also found, however, that defendant used $30,203.65 of those funds to make improvements to the Big Lake property and that defendant was entitled to receive contribution of $15,101.83 from plaintiff. The court also found that defendant was entitled to one-half of the remaining $40,000 of the escrowed funds from the sale of the Big Lake property.

## D. INVASION OF SEPARATE PROPERTY

Defendant argues that because the trial court determined that the proceeds from the sale of the Paoli property were plaintiff's separate property, the court was required to consider the exceptions to noninvasion of property in MCL 552.23 and MCL 552.401. Defendant's arguments are without merit.

Separate property is subject to distribution only when one of two statutorily created exceptions is met: MCL 552.23 or MCL 552.401. *Reeves*, 226 Mich App at 494. MCL 552.23(1) allows for the invasion of the parties' separate estates by the other party if, following the division of the marital estate, the division of the estate is such that the award is insufficient to allow for the suitable support and maintenance of either party. *Id*. Likewise, under MCL 552.401, invasion of a party's separate estate is permitted if the other spouse " 'contributed to the acquisition, improvement, or accumulation of the property.' " *Korth v Korth*, 256 Mich App 286, 291-292; 662 NW2d 111 (2003), quoting MCL 552.401. "When one significantly assists in the acquisition or growth of a spouse's separate asset, the court may consider the contribution as having a distinct value deserving of compensation." *Reeves*, 226 Mich App at 495. The statutes "simply empower the circuit court" and do not provide an absolute right to invade the other party's separate property. *Allard v Allard (On Remand)*, 318 Mich App 583, 600-601; 899 NW2d 420 (2017).

Defendant argues that the trial court clearly erred by failing to consider MCL 552.23(1). Specifically, he argues that the division of property is not suitable to support him and that invasion of plaintiff's separate property of $190,000 is warranted. He simply cites *Charlton v Charlton*, 397 Mich 84; 243 NW2d 261 (1976), for the proposition that "invasion is allowed when one party demonstrates such a need." Defendant does not cite to the record or otherwise explain his contention that he is unable to support himself. As discussed previously, while defendant testified that he no longer worked as a plumber because of his back and his knees, he also testified that he did a lot of "heavy duty work" to improve the Big Lake property. He also testified that he purchased a new "Ford F150 extended cab" truck with a "full slide out" for the bed of the truck that he could use without "climbing in" for the produce business. Defendant did not offer evidence at trial of a need to invade plaintiff's separate property. Defendant has wholly failed to show that the trial court erred by failing to apply the statutory exception of MCL 522.23(1).

Defendant also argues that the trial court should have applied MCL 552.401 because his efforts at improving the Big Lake property increased the value of the property and, therefore, his contribution to plaintiff's separate property would allow invasion of her property. However, the court did find that plaintiff was responsible for one-half of the cost of the improvements to the Big Lake property. Defendant also received $40,000 at closing from the increase in value of the Big

-8-

Lake property, and $20,000 from the remaining escrowed funds.  Thus, the trial court did consider defendant's contributions as having a distinct value deserving of compensation.

## E.  FAULT

Defendant argues that the property division was unfair and inequitable because the trial court found defendant to be primarily at fault for the breakdown of the marriage.  Defendant does not dispute that fault is one factor that is relevant to the distribution of property.  See *Sparks*, 440 Mich at 160-161 (the past relations and conduct of the parties).  He argues that he never struck or threatened plaintiff, and therefore the "element of fault does not support the disproportionate division imposed by the trial court."  Defendant does not discuss the property division with respect to this issue, nor does he point to any facts to support his assertion that the court assigned disproportionate weight to the factor of fault, aside from the court's finding that defendant was primarily at fault for the breakdown of the marriage.  He also does not identify the manner in which the property division was allegedly unfair and inequitable in connection with this issue.  Indeed, as previously discussed, the property division was nearly congruent.  This issue is therefore abandoned.  See *McIntosh v McIntosh*, 282 Mich App 471, 484-485; 768 NW2d 325 (2009) (stating that "appellants may not merely announce their position and leave it to this Court to discover and rationalize the basis for their claims").

Affirmed.

/s/ Kathleen Jansen
/s/ James Robert Redford
/s/ Christopher P. Yates