*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KATHLEEN MARIE HULL,

      Plaintiff/Counterdefendant-
      Appellee/Cross-Appellant,

v

JASON LEE HULL,

      Defendant/Counterplaintiff-
      Appellant/Cross-Appellee.

UNPUBLISHED
January 15, 2026
10:51 AM

No. 375462
Isabella Circuit Court
Family Division
LC No. 2023-018545-DM

Before: SWARTZLE, P.J., and GARRETT and WALLACE, JJ.

PER CURIAM.

Defendant appeals by right the trial court's uniform child support order. On appeal, he raises arguments pertaining to the trial court's earlier judgment of divorce following a four-day bench trial. Plaintiff has filed a cross-appeal, also raising arguments pertaining to the judgment of divorce. The parties challenge the trial court's determinations regarding child custody, parenting time, and the valuation and division of the marital estate. For the reasons set forth in this opinion, we affirm in part and vacate in part the parties' judgment of divorce and remand for further proceedings.

## I. BACKGROUND

This case arises from divorce proceedings between plaintiff and defendant following 13 years of marriage. The parties were married on July 7, 2012, and have two minor children, EH and LH. Defendant works in information technology at Central Michigan University, and plaintiff works as a third-grade schoolteacher in the same school that the children attend.

Plaintiff filed for divorce in April 2023 and shortly thereafter moved out of the marital home with the two children. Following a two-day evidentiary hearing, the trial court entered a September 14, 2023 interim order awarding sole physical custody of the children to plaintiff and awarding the parties joint legal custody. The interim order instructed the parties to ensure that the children were enrolled in counseling, but the record reflects that the children did not begin counseling for a significant period of time because of the parties' disagreements. Purportedly

because defendant opposed the children participating in counseling, plaintiff filed a motion for the court to approve the counselor she selected. She also requested the court to order that the parties' older son, EH, be permitted to participate in a sleep study for suspected sleep apnea and issues related to his tonsils at the recommendation of his pediatrician. The court granted plaintiff's motion and ordered that the children attend counseling with a counselor agreed to by both parties.

A four-day bifurcated bench trial was held in 2024 on the issues of child custody, parenting time, and the division of the marital estate. At trial, plaintiff explained that during their marriage defendant had been dealing with significant issues related to his obsessive-compulsive disorder (OCD), which had a negative effect on her, the children, and the household in general. For example, plaintiff testified that defendant would not allow the children to play outside without showering and changing their clothes when they returned inside. She also maintained that after family members returned from work, school, or another activity, they had to take their clothes off at the door, the clothing was placed in bags, and the family members had to shower and change their clothes. In addition, defendant did not allow the children to bring their school books and materials into the home. Defendant, on the other hand, explained that his struggles with OCD had improved after more than six months of counseling and that any rituals associated with the disorder did not affect the children.

Both parties also testified concerning their ongoing disagreements regarding the children, including EH participating in a sleep study, EH being placed in plaintiff's third-grade classroom, whether counseling was benefiting the children, and the removal of plaintiff's contact information at the children's dentist, which defendant claimed was inadvertent. The parties were able to communicate only by way of AppClose, and several exhibits entered into evidence reflected the acrimonious nature of the parties' communications via AppClose and text message.

The equitable division of the parties' marital estate, including the valuation dates of assets and the value of cryptocurrency, were also sources of heated contention at trial. Defendant's testimony on the issue of his separate cryptocurrency and the parties' jointly held cryptocurrency was evasive, unclear, and at times obfuscating. At the end of the four-day bench trial, plaintiff's counsel informed the trial court that defendant had been moving significant amounts of assets that he had not disclosed during discovery. As a result, the court allowed continued cross-examination of defendant on the issue of his assets, and, when that did not prove fruitful, ordered defendant to submit to a deposition. Defendant did not object to the trial court's order.

Following the bench trial, the trial court divided the marital estate. The court determined that approximately $34,000 in jointly held cryptocurrency be excluded from the marital estate. The court also determined that the cryptocurrency should be valued at the time of trial because of the significant increase in value of the cryptocurrency between the date of the parties' separation in April 2023 and the date of trial in May 2024. Regarding custody, the court weighed the best-interest factors of MCL 722.23 and awarded the parties joint legal custody with sole physical custody awarded to plaintiff. The court also ordered that plaintiff be responsible for caring for the children during the day while defendant was at work during his alternating weekly summer parenting time. The court clarified portions of its parenting-time and property-division rulings when defendant sought reconsideration and clarification before the court entered the judgment of divorce.

Defendant now appeals by right. Plaintiff has filed a cross-appeal.

## II. DEFENDANT'S DEPOSITION

Defendant first argues that the trial court erroneously considered his posttrial deposition testimony when it divided the marital estate, which adversely affected his due-process rights. Defendant did not object when the trial court ordered his deposition or when the court referred to his deposition testimony when it divided the marital estate. In addition, he did not argue that his testimony had not been admitted as evidence or that consideration of his testimony violated his due-process rights. Although defendant's arguments regarding his deposition testimony are unpreserved, we address them because they are questions of law, and the facts necessary for their resolution have been presented. See *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006).

Generally, the trial court's rulings on evidentiary issues are reviewed for an abuse of discretion. *Shivers v Covenant Healthcare Sys*, 339 Mich App 369, 373; 983 NW2d 427 (2021). An abuse of discretion occurs when the trial court's decision falls outside of the range of reasonable and principled outcomes. *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016). The court's determination on an issue of constitutional law is reviewed de novo. *In re Muskegon Co Treasurer for Foreclosure*, 348 Mich App 678, 687; 20 NW3d 337 (2023). The trial court's application and interpretation of the court rules is also reviewed de novo. *Jones v Jones*, 320 Mich App 248, 259; 905 NW2d 475 (2017). Further, we review de novo as a question of law whether a party has been denied due process. *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009).

An analysis of whether the trial court erred by referencing defendant's deposition testimony involves both procedural and substantive components. Certain procedural requirements must be met before a transcript is filed with the court. MCR 2.306(F) addresses these procedural requirements, and provides, in pertinent part:

> (3) Except as provided in subrule (C)(3) or in MCR 2.315(E),[1] *a deposition may not be filed with the court unless it has first been transcribed*. If a party requests that the transcript be filed, the person conducting the examination or the stenographer shall promptly file the certified transcript with the court in which the action is pending via the statewide electronic-filing system, by delivering it personally to the court, or by registered or certified mail to the clerk of the court and shall give prompt notice of its filing to all other parties, unless the parties agree otherwise by stipulation in writing or on the record. [Emphasis added.]

The record reflects that the July 22, 2024 deposition transcript was included as an unspecified exhibit to plaintiff's written closing brief following trial. Defendant also filed a closing brief and did not object to plaintiff's inclusion of the transcript or assert that the filing of the transcript was not accomplished as directed in MCR 2.306. At the November 1, 2024 hearing at which the trial court rendered its bench ruling, defendant likewise failed to raise the issue, and,

---

[1] MCR 2.306(C)(3) and MCR 2.315(E) are not applicable because the deposition in this case was not a video deposition.

when the court first ordered that a deposition be conducted, defendant failed to object. Although it was filed with plaintiff's closing brief, the filing of the deposition transcript, for the most part, otherwise complied with MCR 2.306(F)(3): the testimony was transcribed, a certified copy of the transcript was filed with the court, and notice of its filing was provided to defendant.

Under MCR 2.308(A), deposition testimony "shall be admissible at trial or on the hearing of a motion . . . only as provided in the Michigan Rules of Evidence." The court rule also provides that the party opposing the admission of the deposition testimony may raise an objection at trial "for any reason that would require the exclusion of the evidence." MCR 2.308(B). Defendant asserts that the deposition testimony constitutes hearsay, the admission of which violates the rule against hearsay. MRE 801(c) defines hearsay as

> a statement that:
>
> (1) the declarant does not make while testifying at the current trial or hearing; and
>
> (2) a party offers in evidence to prove the truth of the matter asserted in the statement.

Under MRE 802, "[h]earsay is not admissible unless [the rules of evidence] provide otherwise." Deposition testimony is generally considered to be hearsay under the rules of evidence. *Lombardo v Lombardo*, 202 Mich App 151, 154; 507 NW2d 788 (1993). However, MRE 804(b)(2) provides an exception to the rule against hearsay with respect to deposition testimony if the deponent is unavailable as a witness. The rule states that, if the declarant is unavailable, the hearsay rule does not exclude:

> A witness's testimony given in a lawful deposition during the same or another proceeding, if the party against whom the testimony is now offered had— or in a civil case, a predecessor in interest had—an opportunity and similar motive to develop the testimony by direct, or cross, or redirect examination. For this paragraph (2) only, "unavailability of a witness" also includes situations in which:
>
> * * *
>
> (B) on motion and notice, exceptional circumstances make it desirable—in the interests of justice and with due regard to the importance of presenting witnesses' testimony orally in open court—to allow the deposition to be used.

Interpreting the predecessor version of MRE 804(b)(2), this Court in *Lombardo*, 202 Mich App at 155, explained that deposition testimony is admissible under this exception to the rule against hearsay if the following criteria are established:

> (1) the person deposed is unavailable as a witness; (2) the deposition was taken in compliance with law; and (3) in the course of the same proceeding or another proceeding, the party against whom the testimony is now offered, or in a civil action a predecessor in interest, had an opportunity and similar motive to develop the testimony by examining the witness.

-4-

In describing the rule against hearsay, our Supreme Court has acknowledged that it is "a concrete expression of the common-law preference for in-court oral testimony subject to cross-examination." *Shields v Reddo*, 432 Mich 761, 783; 443 NW2d 145 (1989).

Giving due deference to the common-law preference for in-court testimony, the trial court did not err to the extent that it relied on defendant's deposition testimony because it was admissible as an exception to the rule against hearsay since it met all of the requirements of MRE 804(b)(2). Defendant does not suggest that the manner in which the deposition was conducted was unlawful, the deposition was conducted during the same legal proceeding, and defense counsel had an opportunity during the deposition to clarify or rehabilitate defendant's testimony.

The record also indicates that defendant was "unavailable" within the meaning of MRE 804(b)(2). He was deliberately evasive and unforthcoming regarding his financial assets, which is what prompted the trial court to order that he be deposed. Defendant's recalcitrance and lack of cooperation constituted "exceptional circumstances" as contemplated by MRE 804(b)(2)(B). It is clear from the trial court's comments following defendant's in-court testimony that the court was at a loss regarding the cryptocurrency, including its value and location, and that such details were necessary to enable the court to equitably divide the marital estate. The trial court therefore required that defendant provide more detailed information regarding his assets. Accordingly, we are not persuaded that the trial court erred to the extent that it considered defendant's deposition testimony when it divided the marital estate.

Defendant also asserts that the trial court's consideration of his deposition testimony violated his due-process rights because he was denied the opportunity to confront and challenge the evidence used against him. To safeguard procedural due process, a litigant must be given the opportunity to be heard at a meaningful time and in a meaningful manner. *Bonner v Brighton*, 495 Mich 209, 235; 848 NW2d 380 (2014). Although defendant argues that the trial court precluded him from challenging any conclusions it drew from his deposition testimony, as previously noted, defense counsel had an opportunity to clarify or rehabilitate defendant's testimony had counsel chosen to do so. In addition, while defense counsel repeatedly objected to plaintiff's attorney's questions during the deposition, counsel did not move to have either the entire deposition or the challenged portions of the testimony excluded from the record.

Therefore, defendant was provided an opportunity to present the trial court with the evidence he wanted the court to consider. The record reflects that, during the November 1, 2024 hearing at which the court rendered its decision on the record, defendant repeatedly interrupted the court, and the court had to admonish him, asking him to wait to speak until its bench ruling was completed. The record also reflects, however, that the court gave defendant the opportunity to explain and provide further information regarding financial assets when necessary. The court's refusal to allow defendant to interrupt his bench ruling did not deny defendant his right to due process, nor was defendant entitled to provide clarification of his deposition testimony after the fact, at a time when the trial court was issuing its decision. Defendant's claim that he was denied a meaningful opportunity to be heard is without merit.

## III. SEPARATE PROPERTY, DIVISION OF THE MARITAL ESTATE, AND VALUATION OF THE ASSETS

Defendant contends that the trial court erred by including in the marital estate one bitcoin, which he asserts was his premarital asset. He also argues that the trial court erred by using different valuation dates for the cryptocurrency in comparison to other financial assets. On cross-appeal, plaintiff argues that the trial court erred by awarding defendant any amount of cryptocurrency as a separate asset because of defendant's conflicting and disingenuous testimony on the subject of cryptocurrency. Plaintiff requests that this Court reverse the trial court's ruling awarding defendant the parties' jointly held cryptocurrency. For the reasons stated below, we vacate the property distribution regarding the cryptocurrency and remand for the trial court to redetermine the value of the cryptocurrency as of the time of trial and to modify the property distribution and equalization payment, if necessary.

## A. STANDARDS OF REVIEW

This Court reviews for clear error the trial court's factual determinations regarding the division of marital assets and whether a specific asset constitutes marital or separate property. *Hodge v Parks*, 303 Mich App 552, 554; 844 NW2d 189 (2014). The trial court's factual findings are clearly erroneous if this Court, after reviewing the record as a whole, is left with a definite and firm conviction that the trial court made a mistake. *Id*. at 555. The trial court's ultimate dispositional ruling with respect to the division of property is reviewed to determine if it was fair and equitable in light of the court's factual findings. *Id*. This Court will reverse only if it is left with the definite and firm impression that the trial court's dispositional ruling was inequitable. *Id*. This Court reviews de novo questions of law related to the division of the marital estate. *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010).

With respect to the valuation of marital assets, this Court reviews the trial court's factual findings under a clearly erroneous standard. *Welling v Welling*, 233 Mich App 708, 709; 592 NW2d 822 (1999). This Court will afford " 'special deference' " to the trial court's factual findings if they are based on the credibility of a witness. *Id*., quoting *Draggoo v Draggoo*, 223 Mich App 415, 429-430; 566 NW2d 642 (1997).

## B. ANALYSIS

The trial court included 2.81 bitcoin in the marital estate.[2] Defendant argues that one bitcoin was his premarital asset that should not have been included in the marital estate. Plaintiff argues on cross-appeal that the trial court erred by excluding from the marital estate jointly held cryptocurrency, in the approximate amount of $34,739, which went missing shortly after plaintiff filed for divorce.

Before dividing the marital estate, the trial court must decide what property is marital property and what property is premarital property. *Cunningham*, 289 Mich App at 200-201. Generally, marital property is property earned or acquired during the marriage, while separate property is property earned or acquired before the marriage. *Id*. at 201. When the court has

---

[2] The trial court gave the bitcoin a value of $63,657 each, for a total value of $178,876.

determined what constitutes marital property, "the whole of which constitutes the marital estate," it can then apportion the marital estate equitably in light of all the relevant circumstances. *Id.*

The general rule is that each party takes from the marriage their own separate assets without such assets being invaded by the other party. *Reeves v Reeves*, 226 Mich App 490, 494; 575 NW2d 1 (1997). However, two exceptions allow for the parties' separate assets to be invaded. One such exception exists if the award to a party is insufficient for the suitable maintenance of a party. MCL 552.23(1). The other exception provides that separate assets may be invaded if the other spouse contributed to acquiring, improving, or accumulating the asset at issue. MCL 552.401. If either of these statutory exceptions is established, a spouse's otherwise separate property "can be opened for redistribution . . . ." *Id.* The determination of whether property is separate or marital is not a simple one, but this Court has recognized that separate assets may "lose their character as separate property and transform into marital property if they are commingled with marital assets and 'treated by the parties as marital property.' " *Cunningham*, 289 Mich App at 201, quoting *Pickering v Pickering*, 268 Mich App 1, 10-12; 706 NW2d 835 (2005).

The trial court's goal when dividing the marital estate is to "reach an equitable division in light of all the circumstances." *Welling*, 233 Mich App at 710. Each spouse need not receive a "mathematically equal" share, but any significant departures from congruence require a clear explanation from the court. *Id.* When dividing the marital estate, the court is to consider the duration of the marriage, each party's contribution to the marital estate, the parties' respective stations in life, each party's earning ability, any fault or past misconduct, and the age, health, and needs of each party, as well as any other equitable circumstances. *Id.*

At trial, plaintiff testified she was aware that defendant had 2.81 bitcoin that was held in his own name, valued at $63,657 each, and she was seeking half of that asset. Defendant testified that he began to mine cryptocurrency in 2011 with his brother while living with his parents. He also stated that before he and plaintiff married, he owned one bitcoin valued at approximately $100.[3] The evidence also established that the parties acquired additional cryptocurrency after they married and that defendant withdrew approximately $34,739 in cryptocurrency shortly after plaintiff filed for divorce. The record identifies that particular cryptocurrency as the "missing bitcoin."

Because a portion of the cryptocurrency was "missing," and the record reveals that the trial court strongly suspected defendant had access to it and refused to make it available, it appears the court awarded that cryptocurrency to defendant despite it being marital property and considered the bitcoin defendant argues was his separate, premarital asset part of the marital estate. The record certainly supports such reasoning. The record reflects the court's serious concern that defendant, both at trial and during his deposition, engaged in gamesmanship with respect to financial assets, including the bitcoin. Defendant's testimony was evasive, and he admitted moving money in an effort to hide assets so that plaintiff could not access such assets. Under these circumstances, we

---

[3] Defendant acknowledged during cross-examination that he did not have evidentiary support to confirm his ownership of one bitcoin before the parties' marriage, claiming that it was essentially not possible to produce such evidence.

are not left with a definite and clear impression that the court's dispositional rulings regarding the cryptocurrency were unfair or inequitable.

However, defendant also challenges the trial court's valuation of the assets in dividing the marital estate. Plaintiff asserts that defendant abandoned his argument by failing to develop it and cite pertinent facts of record. See *Mitchum v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). While plaintiff is correct that defendant's discussion of this issue in his brief on appeal is cursory, defendant does provide a more substantial legal argument in his reply brief on appeal.

Defendant primarily asserts that the trial court abused its discretion by valuing the cryptocurrency as of the date of trial rather than the date of separation as it did regarding the parties' other financial assets. It is within the trial court's discretion to choose a valuation date for assets, and this Court will not interfere with the trial court's exercise of discretion as long as it had a plausible reason for its choice. *Thompson v Thompson*, 189 Mich App 197, 199; 472 NW2d 51 (1991). Defendant is correct that the trial court valued the parties' marital home as of December 2021, but the record reflects that the court chose this date by stipulation of the parties because it was when the house was last appraised. At plaintiff's request, the court also used the date of the parties' separation, April 13, 2023, for purposes of valuing the parties' bank accounts and retirement assets because the parties used their own separate accounts from that date forward. However, regarding the cryptocurrency, the court noted that it dramatically increased in value from April 2023 to May 2024, and the court purposely valued the cryptocurrency as of the date of trial to allow plaintiff to recoup any gain in the cryptocurrency's value.[4] Although the court stated that it was using the date of trial to value the cryptocurrency, the values it relied on for the cryptocurrency were taken from plaintiff's trial brief, which reflected the cryptocurrency values as of the parties' separation date. Accordingly, we vacate the portion of the divorce judgment awarding the cryptocurrency to defendant and remand for further proceedings. On remand, the parties shall provide proofs regarding the value of the cryptocurrency as of the time of trial, and the trial court shall determine the value of the cryptocurrency as of the time of trial. The court shall then modify the property distribution and equalization payment, if necessary.

## IV. DEFENDANT'S SUMMER PARENTING TIME

Defendant next challenges the trial court's decision to allow plaintiff to look after the children during his summer parenting time while he is at work. To ensure the expeditious resolution of child-custody disputes " 'by prompt and final adjudication,' " we must affirm the trial court's child-custody determinations " 'unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Sabatine v Sabatine*, 513 Mich 276, 284; 15 NW3d 204 (2024), quoting MCL 722.28.

> MCL 722.28 incorporates three standards of review into the [Child Custody Act (CCA), MCL 722.21 *et seq*.]: (1) a reviewing court should not substitute its judgment on questions of fact unless the factual determination clearly

---

[4] The court awarded all of the cryptocurrency in this case to defendant.

preponderates in the opposite direction; (2) an abuse of discretion occurs if the result is so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias; and (3) clear legal error exists when a court incorrectly chooses, interprets, or applies the law. [*Sabatine*, 513 Mich at 284 (quotation marks and citations omitted).]

When determining parenting time, the best interests of the child guides the trial court's decision. *Luna v Regnier*, 326 Mich App 173, 179; 930 NW2d 410 (2018). This Court will presume that the best interests of a child are served when the child has a strong relationship with both parents. *Id*. at 180; see also MCL 722.27a(1). " '[P]arenting time shall be granted to a parent in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time.' " *Id*., quoting MCL 722.27a(1). "However, if 'it is shown on the record by clear and convincing evidence that parenting time would endanger the child's physical, mental, or emotional health' the court need not order parenting time." *Id*., quoting MCL 722.27a(3) (brackets omitted).

Similarly, MCL 722.27a provides the court with authority to impose "reasonable terms or conditions" on parenting time:

(9) A parenting time order may contain any reasonable terms or conditions that facilitate the orderly and meaningful exercise of parenting time by a parent, including 1 or more of the following:

* * *

(i) *Any other reasonable condition determined to be appropriate in the particular case*. [Emphasis added.]

A review of the record, including the trial court's consideration of the best-interest factors, shows that the court determined allowing plaintiff to care for the children during defendant's summer parenting time when he is at work is in the children's best interests. For example, this condition allows plaintiff to take the children to their weekly counseling appointments, as defendant was unabashed in stating that he would not do so because counseling appointments interfered with his parenting time. Likewise, as plaintiff argued in her closing, in a text message exchange on September 16, 2023, two days after the court entered its interim order, defendant informed plaintiff that he had no intention of taking the children to their extracurricular activities, including soccer and basketball, during his parenting time. Therefore, the trial court's ruling allowed the children to participate in extracurricular activities and allowed plaintiff to take them to their counseling sessions. On these facts, we are not persuaded that the record did not support the court's factual findings, or that the court committed an abuse of discretion or a clear legal error on a key issue. *Id*.

V. AWARD OF JOINT LEGAL CUSTODY

On cross-appeal, plaintiff argues that the trial court abused its discretion by awarding the parties joint legal custody because the record establishes that they are unable to communicate and

cooperate with each other. On this close question, we conclude that the trial court did not abuse its discretion.

Under MCL 722.26a(7)(b),

"joint custody" means an order of the court in which 1 or both of the following is specified:

* * *

(b) That the parents shall share decision-making authority as to the important decisions affecting the welfare of the child.

In *Lieberman v Orr*, 319 Mich App 68, 80; 900 NW2d 130 (2017), this Court explained that the term joint legal custody finds its origin in MCL 722.26a(7)(b), which addresses the shared decision-making authority of parents regarding important decisions impacting their children's welfare. See also *Pierron v Pierron*, 282 Mich App 222, 246; 756 NW2d 345 (2009), aff'd 486 Mich 81 (2010) (observing that in a joint legal custodial arrangement the joint custodians share decision-making authority regarding important decisions concerning the child's well-being, such as the child's education and schooling). In *Bofyisil v Bofyisil*, 332 Mich App 232, 249; 956 NW2d 544 (2020), this Court addressed the level of agreement necessary for the joint legal custody arrangement to be successful:

In order for joint custody to work, parents must be able to agree with each other on basic issues in child rearing—including health care, religion, education, day to day decision-making and discipline—and they must be willing to cooperate with each other in joint decision-making. *If two equally capable parents whose marriage relationship has irreconcilably broken down are unable to cooperate and to agree generally concerning important decisions affecting the welfare of their children, the court has no alternative but to determine which parent shall have sole custody of the children.* [Citation omitted; emphasis added.]

As the trial court acknowledged, the decision whether to award the parties joint legal custody was a very close question under the circumstances of this case. The evidence at trial revealed that the parties have a very acrimonious relationship fraught with conflict. Additionally, throughout the lower court proceedings, both parties took actions that undermined their coparenting relationship. For example, plaintiff scheduled the initial sleep study for EH without informing defendant. Defendant, on the other hand, canceled the sleep study at the last minute without telling plaintiff and updated the contact information at the children's dental office to remove plaintiff's information without informing her. The parties had such a difficult time agreeing on these issues that plaintiff filed a motion seeking a court order directing defendant to cooperate with the sleep study and to allow the children to attend counseling.

While at first glance this case would appear to be one not suitable for an award of joint legal custody, it is worthy of note that the struggles that the parties experienced in coparenting took place during the pressure and stress associated with the lower court proceedings to dissolve their marriage. Further, it is clear from the trial court's ruling that the court was optimistic that,

-10-

moving forward, the parties would be able to set aside their personal differences and work together to raise their children. While the court stated that it had concerns about defendant's ability to work with plaintiff, the court was also clearly aware of defendant's active involvement in his children's lives, as well as his commitment to ensuring that they received proper medical care. For example, defendant testified regarding the time and energy he spent contacting counselors for the children, as well as his personal visit to the sleep study facility to ensure that it would a suitable place for EH to be tested. Defendant also initially refused to allow the children to participate in counseling, but he testified that he relented after hearing plaintiff's opinion that counseling was necessary. Accordingly, while the record demonstrates that the parties have difficulty cooperating, the trial court clearly saw that an effective coparenting relationship was possible. To this end, the court ordered the parties to use AppClose to communicate with each other regarding the children. On this close question, we are not persuaded that the court's determination amounted to an abuse of discretion.

## VI. CONCLUSION

The judgment of divorce is affirmed in part, vacated in part, and this case is remanded for further proceedings as directed. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Kristina Robinson Garrett
/s/ Randy J. Wallace

-11-